IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                    No. 19-CR-1631 KWR

KAMAL BHULA,

    Defendant.

## DEFENDANT'S MOTION TO RECONSIDER CONDITIONS OF RELEASE BASED ON MEDICAL RISK RELATED TO THE COVID-19 PANDEMIC

**COMES NOW** Defendant Kamal Bhula and requests that this Court order his release from pre-trial custody based on the increased threat to his health and safety during the current COVID-19 pandemic. Opposition by the Government is presumed. Defendant is a 41 year old husband and father to a young child. He has no criminal history whatsoever and was a business owner before being taken into custody and charged in the instant matter. He is also is a type 2 diabetic which is controlled by taking Metformin twice a day. He also suffers from occasional asthma. As a result of his chronic diabetes and history of asthma, should he contract the COVID-19 virus he is at higher risk of developing severe complications and of dying from the disease. Due to his vulnerability for severe complications, he is currently being housed in the medical unit at the Cibola County Detention Center but, this precaution is insufficient to minimize the risk to his health given that there are at least two confirmed cases of inmates with COVID-19 at the detention center currently. Upon information and belief, those infected inmates are also being housed in the medial unit at Cibola and given the communicability of COVID, Mr.

1

Bhula is understandably very concerned for his health. Instead of being confined to the medical unit and risking exposure to the COVID-19 virus, there are conditions of release that can be fashioned by the Court that will protect the safety of the community and ensure Mr. Bhula's attendance at future court settings. Therefore, Mr. Bhula respectfully petitions this Court to reconsider his conditions of release and release him third-party custodian to either his wife or to his former employer.  In further support of this motion, Defendant states:

1.  Mr. Bhula is originally from Johannesburg, South Africa but moved to the United States in 2015 and filed an asylum claim in 2017, which is currently pending.

2. Prior to moving to the United States, Mr. Bhula managed ten gas stations in Johannesburg for approximately five years. He then opened an ice factory with his brother and built a successful business for over a year and a half before moving to the United States.

3. When he moved to the United States with his wife, he obtained a work visa and began working for Sanjay Patel, managing a hotel in Grand Junction, Colorado. Mr. Patel is a successful business owner in Colorado, who owns six hotels across the state.

4. After running Mr. Patel's hotel for approximately two years he was offered a new business opportunity running the Best Choice Motel in Albuquerque, New Mexico.

5.  In March of 2018, Mr. Bhula moved to Albuquerque with his pregnant wife and began running the Best Choice motel. In June of 2018 Mr. Bhula's first child, a baby boy, was born and Mr. Bhula was excited by the prospects for his future. He was running a new business in a new city with his wife and young family. In early 2019 Mr. Bhula moved his family into a home in the northeast heights of Albuquerque.

6. When Mr. Bhula took over the Best Choice motel, it was already fully staffed with employees, many of whom remained working there. This allowed Mr. Bhula to spend every

night with his new son and freed him up to manage the administrative tasks of the motel.

7. Unfortunately, Mr. Bhula soon realized that there were problems at the Best Choice motel. In order to address these issues- which stemmed in part from the large homeless population in the area and the large amount of drug trafficking in the neighborhood- Mr. Bhula called the police a couple of times for help but was treated as criminal instead of as a legitimate business owner. He was threatened with the loss of his business if he didn't clean up the motel, so he worked with the administration at the City of Albuquerque to try and improve things. His efforts included building up a wall behind the motel, installing ten new surveillance cameras on the property and putting up signs to warn loiterers of the city ordinance against trespassing.

8. He also tried to crack down on large groups of people congregating in the rooms and large numbers of visitors coming to the property, because it disrupted the other guests. This angered and upset many of the long-term guests at the motel that were used to having free run of the property. Upon information and belief, the guests that were angered by Mr. Bhula's attempts to clean up the property are some of the same people the Government is now claiming were victimized by Mr. Bhula.

9. Unfortunately, despite his efforts, Mr. Bhula was arrested on May 7, 2019 following a joint investigation by the New Mexico Attorney General's Office and the Homeland Security Investigation.

10. On June 12, 2019 Mr. Bhula was indicted on multiple charges related to the alleged sex trafficking of women. [Doc. 2]

11. Mr. Bhula vehemently denies these allegations and intends to proceed to trial to prove his innocence.

12. Mr. Bhula was initially represented by attorneys with the Federal Public Defender's

Office.

13. On June 20, 2019 Mr. Bhula appeared in Court for an arraignment and detention hearing, at which time he was ordered detained pending trial. [Doc. 25]

14. Since Mr. Bhula's detention hearing, circumstances have changed dramatically in that the COVID-19 pandemic has exploded around the world and specifically in Cibola County.

15. As more has been learned about this virus, information has emerged that certain underlying health conditions, including diabetes, significantly increases the chances of severe complications and death.

16. Given Mr. Bhula's type 2 diabetes, he is at an elevated risk for complications should he contract COVID-19 and should be released from custody pending trial in this matter.

I.      ARGUMENT.

Defendant moves this Court to reconsider its detention order and enter an order granting his release.  Defendant, who is a pretrial defendant currently detained in Cibola County, is within the group of people the Centers for Disease Control and Prevention ("CDC") has categorized as most-at-risk for contracting COVID-19, a dangerous illness spreading rapidly across the world, including through New Mexico.  The Bail Reform Act provides for the "temporary release" of a person in pretrial custody "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."  18 U.S.C. § 3142(i).  The health risk to Defendant, because of his underlying health conditions and the conditions at the Cibola County facility, as described in detail below, necessitates his temporary release on bail until this pandemic has ended.  Defendant proposes that he be released to the third-party custody of his former employer, businessman Sanjay Patel.

Mr. Patel lives in Montrose, Colorado, has agreed to serve as a custodian for Mr. Bhula

4

and is otherwise eligible to serve as a third-party custodian. Mr. Bhula's wife and young son live in Montrose at a hotel owned by Mr. Patel. Mr. Patel has indicated that Mr. Bhula can live at his hotel and can work for him at the hotel that Mr. Bhula used to manage before moving to Albuquerque. Mr. Patel has known Mr. Bhula for approximately five years and Mr. Bhula worked for him for two years, managing the hotel. He trusts and likes Mr. Bhula and describes him as a good employee. Mr. Bhula is not a flight risk, as his family is actively seeking permanent residence in the United States via an asylum claim. Mr. Bhula has no criminal history whatsoever and would not oppose other conditions of release as deemed appropriate, such as GPS monitoring and pre-trial supervision.

### A. Changed Circumstances: COVID-19 Outbreak

As of May 20, 2020, the new strain of coronavirus which causes COVID-19, has infected over 4,966,006 people, leading to at least 326,424 deaths worldwide.[1] On March 11, 2020, the World Health Organization officially classified COVID-19 as a pandemic.[2] Governor Lujan-Grisham declared a State of Emergency on March 11, 2020,[3] and ordered schools to close, restaurants and bars to operate at 50% capacity, prohibit bar seating, and space tables six feet apart.[4] Governor Grisham has also banned all mass gatherings and ordered the closure of all shopping malls, recreational facilities, health clubs, spas, recreational facilities, movie theatres, and flea markets. Bars are closed, and restaurants have been ordered to close their dining areas and to accommodate take-out and delivery orders only. Initially the Governor ordered all hotels,

---

[1] *COVID-19 Map*, Johns Hopkins University & Medicine (May 20, 2020), *at* https://coronavirus.jhu.edu/map.html (updating regularly).
[2] *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (March 11, 2020) *at* https://bit.ly/2W8dwpS.
[3] https://www.governor.state.nm.us/2020/03/11/updated-governor-department-of-health-announce-first-positive-covid-19-cases-in-new-mexico/
[4] https://www.kob.com/albuquerque-news/covid-19-state-issues-public-health-order-limiting-restaurant-bar-occupancy-to-no-more-than-50/5674949/

motels, and places of lodging to reduce their capacity to 50% but on April 6, 2020 she further ordered that all hotels, motels and places of lodging further reduce their capacity to 25%.[5] This order remains in effect as of the filing of this motion, but the State is slowly working towards a limited re-opening of society. However, despite the efforts to re-open, the risk of COVID-19 has not decreased, and to the contrary, seems to be increasing in detention facilities around the country and New Mexico. As of May 20, 2020, there are 6,192 positive cases in New Mexico and there have been 276 deaths.[6]

The CDC has issued guidance that individuals at higher risk of contracting COVID-19—people with chronic medical conditions such as lung disease, heart disease, and diabetes—take immediate preventative actions, including avoiding crowded areas and staying home as much as possible.[7] With confirmed cases in New Mexico that indicate community spread,[8] we must take every necessary action to protect vulnerable populations and the community at large. Given that there are at least two cases of COVID-19 inside of Cibola County Detention Center, all inmates at heightened risk of developing severe complications should be relocated immediately to protect them and prevent further spread of the disease.

### B. *Conditions of Confinement and Spread of Coronavirus*

Conditions of pretrial confinement create the ideal environment for the transmission of contagious disease.[9] Inmates cycle in and out of pretrial facilities from all over the world and the country, and people who work in the facilities leave and return daily, without screening. In this

---

[5] https://www.governor.state.nm.us/2020/04/06/governor-officially-extends-emergency-order-to-april-30/
[6] https://cv.nmhealth.org/ (May 20, 2020) (updating regularly)
[7] *People at Risk for Serious Illness from COVID-19*, CDC (March 12, 2020) *at* https://bit.ly/2vgUt1P.
[8] The KOAT story supra n. 7 indicates that while the first 5 cases in Bernalillo County had travel-related exposure; the next 8 did not.
[9] Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, *at* https://doi.org/10.1086/521910.

case, Defendant is being held in a facility with at least two federal inmates known to be COVID positive. It is believed that those inmates were transferred to Cibola County from Otero County Detention Center, where at least 32 detainees have tested positive for COVID-19. At this point it is not a matter of if, but rather a question of when, the disease spreads through the population at Cibola County Detention Center.

Incarcerated people have poorer health than the general population, and even at the best of times, medical care is limited in pretrial detention centers.[10]  Many people who are incarcerated also have chronic conditions, like diabetes, hepatitis, or HIV, which makes them vulnerable to severe forms of COVID-19.  Ms. Gonzales suffers from high blood pressure, a condition that increases her risk of developing more severe complications from the COVID-19 virus.[11] Her health is further complicated by the fact that she also has high cholesterol.

According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[12] Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[13]  In China, officials have confirmed the coronavirus spreading at a rapid pace in Chinese prisons, counting 500 cases as of February.[14]

---

[10] Laura M. Maruschak et al. (2015). Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12. NCJ 248491. Washington, D.C.: U.S. Department of Justice, Bureau of Justice Statistics, *at* https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf

[11] https://www.cnn.com/2020/04/17/health/blood-pressure-coronavirus-wellness/index.html

[12] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), *at* https://bit.ly/2W9V6oS.

[13] *Prisons and Jails are Vulnerable to COVID-19 Outbreaks*, The Verge (Mar. 7, 2020) *at* https://bit.ly/2TNcNZY.

[14] Rhea Mahbubani, *Chinese Jails Have Become Hotbeds of Coronavirus As More Than 500 Cases Have Erupted, Prompting the Ouster of Several Officials*, Business Insider (Feb. 21, 2020) *at* https://bit.ly/2vSzSRT.

Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons," noting that "[t]heir detention amid increasingly deteriorating conditions defies basic human decency."[15] Courts across Iran have granted 54,000 inmates furlough as part of the measures to contain coronavirus across the country.[16] Bernalillo County District Attorney Raúl Tórrez, joined by Chief Public Defender Ben Baur, has asked the Supreme Court to intervene and delay hearings for out of custody defendants.[17] In his letter to the Supreme Court, Chief Public Defender Baur noted, "Social distancing is the single most effective tool we have to slow the spread and flatten the curve to ensure that adequate healthcare resources are available as the numbers of infections increase. Unfortunately, incarcerated people do not have the ability to utilize social distancing techniques or to protect themselves in any meaningful manner." He called for a suspension of arrest and detention for non-violent offenses, failure to pay fines, technical violations of release or probation, and other violations which do not threaten public safety. On March 17, in response to these pleas and the pandemic, the New Mexico Supreme Court suspended all criminal jury trials, in addition to its previous suspension of civil trials.[18] The Federal Court for the District of New Mexico has also taken action as a result of the pandemic, and all jury trials have been suspended until at least July 6, 2020.

---

[15] Jennifer Hansler and Kylie Atwood, *Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak*, CNN (Mar. 10, 2020) *at* https://cnn.it/2W4OpV7.

[16] Claudia Lauer and Colleen Long, *US Prisons, Jails On Alert for Spread of Coronavirus*, The Associated Press (Mar. 7, 2020) *at* https://apnews.com/af98b0a38aaabedbcb059092db356697.

[17] Katy Barnitz, *DA to Supreme Court: 'More drastic measures are needed'; Chief Public Defender says virus could spread rapidly in jails* Albuquerque Journal, March 17, 2020, p. A5, available at: https://abqjournal-nm.newsmemory.com/?token=6de4ac0363592ffd8224cfe06797f461_5e70fd08_2eb4cef&selDate=20200317&utm_source=emailMarketing&utm_medium=email&utm_campaign=TecnaviaMorningPush

[18] https://www.nmcourts.gov/news.aspx

### C. *The Bail Reform Act Requires Defendant's Release*

A "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The circumstances that existed when Defendant was ordered detained have now changed. There is a pandemic that poses a direct risk to Defendant that is far greater if he continues to be detained during this public health crisis.

Mr. Bhula is vulnerable because he suffers from chronic health conditions, including a condition specifically identified as posing an increase risk in the event of COVID-19 infection— diabetes. He also has a history of asthma, which is a lung disorder that may also contribute to poorer outcomes for those afflicted with the COVID-19 virus.

As an initial matter, the Bail Reform Act requires that a court should "bear in mind that it is only a 'limited group of offenders' who should be denied bail pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225 at 7, as reprinted in 1984 U.S.C.CA.N. 3182, 3189); *see United States v. Salerno*, 481 U.S. 739, 755 (1987) (suggesting that "detention prior to trial or without trial is the carefully limited exception" to liberty before trial). One charged with a crime is, after all, presumed innocent. *Stack v. Boyle*, 342 U.S. 1, 4 (1951). A single individual unnecessarily detained before trial is one individual too many, and the increasing use of the practice places tremendous wear on our constitutional system. *United States v. Montalvo-Murillo*, 495 U.S. 711, 723–24 (1990) (Stevens, J., dissenting, joined by Brennan and Marshall, JJ.). Due to the crucial interests involved, it follows that a "case-by-case" approach is required at any stage of the case in assessing the propriety of pretrial detention. *See United States v. Gonzales Claudio*, 806 F.2d 334, 340 (2d Cir. 1986) (discussing due process

analysis for evaluating propriety of prolonged pretrial detention, and the interests at stake) (citations omitted), *cert. dismissed sub nom.*, *Melendez-Carrion v. United States*, 479 U.S. 978 (1986).

The courts have long recognized that there is no greater necessity than keeping a defendant alive, no matter the charge. As Judge Weinstein held, "We do not punish those who have not been proven guilty. When we do punish, we do not act cruelly. Continued incarceration of this terminally ill defendant threatens both of these fundamental characteristics of our democracy." *United States v. Scarpa*, 815 F.Supp.88 (E.D.N.Y. 1993) (pretrial defendant with AIDS facing murder charges released on bail because of the "unacceptably high risk of infection and death on a daily basis inside the MCC"). *See also United States v. Adams*, No. 6:19-mj-00087-MK, 2019 WL 3037042 (D. Or. July 10, 2019) (defendant charged with violation of the Mann Act and possession of child pornography and suffering from diabetes, heart conditions and open sores released on home detention because of his medical conditions); *United States v. Johnston*, No. 17-00046 (RMM) 2017 WL 4277140 (D.D.C. Sept. 27, 2017) (defendant charged with violation of the Mann Act and in need of colon surgery released to custody of his wife for 21 days); *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143 (D.P.R. 2002) (badly wounded defendant released to custody of his relatives).

This Court should consider the "total harm and benefits to prisoner and society" that continued pretrial imprisonment of Defendant will yield, relative to the heightened health risks posed to Defendant during this rapidly encroaching pandemic. *See United States v. D.W.*, 198 F. Supp. 3d 18, 23 (E.D.N.Y. 2016); *Davis v. Ayala*, 135 S. Ct. 2187, 2209 (2015) (Kennedy, J., concurring) (calling for heightened judicial scrutiny of the projected impact of jail and prison conditions on a defendant); *United States v. Mateo*, 299 F. Supp. 2d 201, 212 (S.D.N.Y. 2004)

(reducing sentence where defendant's pretrial conditions were "qualitatively more severe in kind and degree than the prospect of such experiences reasonably foreseeable in the ordinary case"); *United States v. Francis*, 129 F. Supp. 2d 612, 619-20 (S.D.N.Y. 2001) (reducing sentence in acknowledgment of "the qualitatively different, substandard conditions to which the Defendant was subjected" in pretrial detention).

### D. Conditions of Release Are Available That Allow Defendant To Be Treated Humanely While Also Ameliorating Any Danger To The Community

Mr. Bhula comes before the Court with absolutely no criminal history and current criminal charges that are weak at best. He is a married man with a young child and a history of working hard for his family. He and his wife left South Africa five years ago, seeking a better life in America. For the first four years, they lived the American dream. They both worked hard in the service industry running a hotel in Colorado and then in Albuquerque until Mrs. Bhula gave birth to their son in June of 2018. The birth of their son was particularly significant to them because they had been trying unsuccessfully to conceive for almost ten years. They endured years of fertility treatments, first in South Africa, and then in the United States, before their son was born. They were also fleeing oppression in South Africa and seeking asylum in the United States, a claim that will be jeopardized if Mr. Bhula flees or is convicted of any crimes. He has more motivation than most to adhere to all of the Court's conditions. The Bhulas are terrified of the prospect of having to return to South Africa with their young son, a child that is an American citizen by birthright.

Mr. Bhula's former employer, Sanjay Patel, a successful business man and hotelier in Colorado, has agreed to serve as a third-party custodian to Mr. Bhula. Mr. Patel has already provided housing to Mr. Bhula's wife and son while Mr. Bhula has been incarcerated, and he welcomes Mr. Bhula to return to Montrose, Colorado and reside in his hotel and work for him.

If released, Defendant will not be left to his own devices, but will be supported and monitored by Pretrial Services. Since 2009, Pretrial Services' data has found that only 2.9% of defendants in the highest risk category were re-arrested for a violent crime while on release.[19] In the District of New Mexico, the Pretrial Services Violations Summary Report for the 12-Month Period Ending September 30, 2018, of the 919 cases in release status, there were violations in only 14.6% of the cases, and only 33 failures to appear. There were zero re-arrest violations (for new crimes).[20] Older individuals and the chronically ill, no matter what crime they are accused of, pose a lower risk of violating supervision, particularly during a global pandemic during which even leaving the house will endanger their lives. Defendant does not contend that he is elderly. He is 41 years old and has chronic health conditions which place him in danger in the event that he becomes infected with COVID-19.

Defendant proposes that he be released third-party custodian to his former employer, Sanjay Patel. Mr. Patel has agreed to serve in this capacity and can even provide housing and employment to Mr. Bhula. Mr. Bhula will comply with whatever conditions of release are required of the Court, but asks that he be permitted to work so he can support his family. He and his family are highly motivated to assure that he complies with conditions of release.

## II.     CONCLUSION

Defendant is among the vulnerable population at heightened risk of getting very sick from this illness. For all of the above reasons, Defendant should be granted release on conditions of supervision.

WHEREFORE, Defendant respectfully requests that the Court release him on conditions

---

[19] Thomas H. Cohen, Christopher T. Lowenkamp, and William E. Hicks, *Revalidating the Federal Pretrial Risk Assessment Instrument (PTRA): A Research Summary* (September 2018) *at* https://www.uscourts.gov/sites/default/files/82_2_3_0.pdf.

[20] Table H-15, U.S. District Courts -- Pretrial Services Violations Summary Report For the 12-Month Period Ending September 30, 2018

of supervision as deemed appropriate by the Court.

                              Respectfully submitted,

                              /s/ *Nicole W. Moss*
                              201 12th St. NW
                              Albuquerque, NM 87102
                              (505) 244-0950

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of this pleading was served as sealed to opposing counsel via the CM/ECF system on this 20th day of May 2020.

/s/ *electronically filed*
Nicole W. Moss