IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| vs. | ) 19-CR-1631 (KWR) |
| EDDIE HILL, | ) |
| Defendant. | ) |

## OMNIBUS REPLY MOTIONS IN LIMINE

Defendant, Eddie Hill, through his court-appointed attorney, Wayne Baker, respectfully files this Omnibus Reply Motions in Limine, requesting the following relief: (1) sever the trial of defendant Eddie Hill from that of his codefendants; (2) exclude the expert testimony of FBI Special Agent; (3) admit evidence of the government's witness victims' sexual behavior because exclusion thereof would violate the defendant's constitutional rights; (4) order disclosure of the three Jane Does referenced in the Superseding Indictment, and (5) any and all other relief requested. Hill's initial Omnibus Motions in Limine (Doc. 135) (hereinafter "Omnibus Motions") is incorporated by reference as if fully set forth herein.

**I.   Motion to Sever:**

Pursuant to the Fifth and Sixth Amendments of the United States Constitution and Rule 14 of the Federal Rules of Criminal Procedure, Mr. Hill's trial should be severed from the trial of his co-Defendants Kamal Bhula, Johnathan Craft, Willie Horton, Pragneshkumar Patel and Omran, LLC. Eddie Hill filed a Motion to Sever as part of his Omnibus Motions (Doc. 135), followed by Johnathan Craft's Motion for Severance (Doc. 136) and then Kamal Bhula filed a Motion for Severance (Doc. 138). The Government filed "United States' Response to Motion to Sever Filed Separately By Kamal Bhula, Jonathan Craft and Eddie Hill" (Doc. 140). Without assessing the merits of the severance motions filed by Craft and Bhula, it is abundantly clear that Eddie Hill's involvement is de minimis and a trial solely against Hill would be bereft of evidence. Indeed, judicial economy is not a factor in granting Mr. Hill a severance because a trial solely against him would not last a day. One need only

look at the Government's "Notice of Intent and Motion to Introduce Evidence of Coconspirator Statements Pursuant to FRE 801(d)(2)(E)," (Doc. 134) consisting of 31 pages without a single alleged coconspirator statement made by or made to Mr. Hill, or a statement made by or made to Mr. Hill involving a Jane Doe victim!

Once again, the evidence against Mr. Hill, based on discovery provided to date, consists of his lawful employment at Best Choice Inn, for approximately three months in July through September 2018, and his residing there for less than a month in or about May and June of 2019. In addition, he posted a picture on Facebook from the Best Choice Inn during his first week of employment, and one person stated he recruited women.

The Government's Response Motion effectively states Hill was an aider and abettor because he was employed at Best Choice and followed procedures. Indeed the Government's motion opposing disclosure of Jane Doe identities (Doc. 147), alleges that "the owners, managers and employees of the Best Choice Inn . . . ran a sex and drug trafficking enterprise," yet none of the other employees were charged.

Mr. Hill received an hourly wage for his employment which lasted less than three months, yet the Government alleges he conspired to commit money laundering and financially benefited from a sex trafficking venture. There is absolutely no evidence linking Mr. Hill to drug trafficking, yet he is charged with maintaining a drug-involved premise and there is no evidence supporting Mr. Hill's involvement in sex trafficking, yet he is charged with conspiring to commit sex trafficking and substantive counts.

The prejudice against Mr. Hill is substantial and patent. This is a complex case with a ten-count indictment and seven defendants. As the Supreme Court made absolutely clear in Zafiro, "[w]hen many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened." 506 U.S. at 539. The Tenth Circuit has long recognized that "[t]he standard of proof required in criminal cases is a cornerstone of constitutional due process. In a case such as this one, involving numerous defendants, multiple transactions, and varying degrees of participation, the task of sifting the evidence relating to each defendant becomes particularly difficult, and a special danger exists that the degree of proof required for conviction might be relaxed. We shall be particularly vigilant in such cases to see that such a relaxation does not occur and that conviction is not predicated upon suspicion." United States v. Butler, 494 F.2d 1246, 1254 (10th Cir. 1974) The Court went on to state "[h]owever when joinder of either defendants or

offenses causes the actual or threatened deprivation of a fair trial, severance is no longer discretionary." Id. at 1256.

No less a legal scholar than District Judge Jack Weinstein described the factors relevant to determining whether the prejudice of a joint trial would result in a miscarriage of justice. United States v Gallo, 668 F. Supp. 736, 749 (EDNY 1987). "As the number of counts and defendants in an indictment increases, it is obvious that the resultant complex trial record makes it more difficult for a jury to keep straight the specific evidence and charges against each defendant." Id. As in the case at bar, the Gallo indictment charged conspiracies, substantive counts and racketeering activity, with the added concern that "[t]he jury must decide whether a defendant conspired, or agreed, to commit a predicate act, but the parallel non-RICO counts consist of both conspiracies and "substantive" offenses, so that the element of proof on any given "scheme" can be quite confusing." Id.

Particularly apropos to Mr. Hill is the disproportionality of the evidence. "The difficulties of a complex, multifarious case such as this are compounded for those defendants against whom only a small portion of the evidence is relevant. The prejudice concomitant with the case's complexity is "particularly injurious" to defendants charged in a small proportion of the counts and who are implicated by only bits and pieces of the evidence." Id. at 750 (citing United States v. Branker, 395 F.2d 881, 882 (2d Cir. 1968)). "Where the evidence against the "minor" defendants is so little or so vastly disproportionate in comparison to that admitted against the remainder of the defendants, the likelihood of spillover prejudice is greatly enhanced. . . . The courts must be scrupulous to avoid the spectre of guilt by association—or, more likely, guilt by confusion." Id. (internal citations and quotations omitted)

Another important consideration favoring severance is the admission of evidence against other defendants, which would be excluded in a separate trial against Mr. Hill under Rule 403 because its limited probative value would be outweighed by the danger of unfair prejudice. Nonetheless, "it would be unreasonable for a jury to perform the intellectual feat in a joint trial of using such proof against some defendants and ignoring it as to others." Id. at 752 (internal citations and quotations omitted) In addition, Mr. Hill has indicated he will oppose any trial continuances, and defense counsel for codefendants have informally queried support for a continuance. The case was designated complex prior to Mr. Hill becoming a defendant via the superseding indictment, so although he consented to the designation, it was

already a moot point. Speedy trial complications are another factor warranting severance. See United States v. Baca, 2016 WL 6404772 at *31 (D.N.M. October 20, 2016) (Judge Browning granting severance for one defendant because "a joint trial would compromise [defendant's] right to a speedy trial and would prevent the jury from making a reliable judgment about his guilt or innocence.")

As previously stated, Mr. Hill is looking at a guidelines sentence of 30 years' incarceration and a fifteen year statutory mandatory minimum sentence if convicted. Accordingly, to prevent a miscarriage of justice and to safeguard the constitutional rights of Eddie Hill, the Court should grant this severance request.

## II. Motion to Exclude Expert Witness Testimony:

Without reiterating the arguments raised in Hill's Omnibus Motions, FBI Agent Landau's testimony should be excluded and nothing in "United States' Response to Defendants' Motion to Exclude Expert Witness Testimony" (Doc. 139) warrants admission thereof. The Government does not need an expert witness to explain the terminology utilized in the prostitution field. Three Jane Does will ostensibly testify about the facts and will likely have the experience and background to explain all of the terminology, practices, methods and activities involved in the commercial sex industry. The purpose and impact of Agent Landau's testimony will be to vouch for the credibility of the victim/witnesses and to explain away any statements they may make that are favorable or exculpatory for the defendants. This, of course, would usurp the jury's function to weigh the evidence and determine witness credibility. See, e.g., United States v. Scheffer, 523 U.S. 303, 313 (1998) ("A fundamental premise of our criminal trial system is that the jury is the lie detector. Determining the weight and credibility of witness testimony, therefore, has long been held to be the part of every case that belongs to the jury ..."); see also United States v. Charley, 189 F.3d 1251, 1267 (10th Cir. 1999) (noting "expert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations, and therefore does not 'assist the trier of fact' as required by Rule 702."); United States v. Toledo, 985 F.2d 1462, 1470 (10th Cir. 1993) (finding "[t]he credibility of witnesses is generally not an appropriate subject for expert testimony.")

The Government sees a singular view and perception of the evidence, a motel established and ran solely as a brothel and a drug-trafficking ring, through the mutually agreed involvement of the owners, managers, employees and residents. This myopic view of

the facts cannot stand objective analysis, thereby requiring the testimony of Agent Landau to "inform" the jury that any evidence to the contrary would be misperceived because the women residing at the Best Choice Inn were all forced, defrauded or coerced to stay there by the defendants through the use of drugs and onerous financial burdens resulting in their need to engage in commercial sex transactions. Agent Landau's testimony would be particularly pernicious when considered in light of the reckless disregard standard incorporated in Section 1591. Agent Landau's testimony is designed to influence the jury to believe that regardless of what other witnesses testify, including women who maintain they were not forced, coerced or defrauded into commercial sex acts, that anyone associated with the Best Choice Inn knew or should have known better. This effectively eliminates the mens rea requirements and effectively reconstructs sex trafficking into a strict liability crime. This is especially so in Mr. Hill's case where his involvement was as a short-term minimal wage employee with no prior motel employment experience.

Agent Landau's testimony, if relevant, would run afoul of Rule 403 balancing as any probative value would be substantially outweighed by a danger, in this instance, of unfair prejudice and misleading the jury. Accordingly, it is requested that the Court either exclude this proposed testimony by Agent Landau or hold a hearing pursuant to Daubert to determine the qualifications of the expert and to circumscribe the areas of testimony.

### III. Motion to Allow Cross-Examination of Alleged Victims' Past Sexual Conduct Under Rule 412(b)

To protect the constitutional rights of the defendant, the Court must allow the government's alleged victim witnesses (Jane Doe 1, Jane Doe 2, Jane Doe 3) to be fully cross-examined to specifically determine whether the defendant recruited, enticed, harbored, transported, provided, obtained or maintained, the victims, through means of force, fraud and coercion, to engage in commercial sex acts, as charged in the Superseding Indictment. In addition, unrestricted cross-examination is necessary to determine the witnesses' credibility, bias and/or motives to lie or fabricate their testimony.

At issue here is the Fifth and Sixth Amendments' fundamental constitutional rights to be deprived of liberty without due process of law and to be confronted with the witnesses against him, respectively. The Government's case will involve witnesses who have engaged in commercial sex acts, i.e., prostitution. Whether the victims were engaged in prostitution activities prior to the charging period in the indictment, i.e., prior to September 2017, is

relevant and material evidence that is crucial to determine whether they were recruited or enticed by the defendants. The "United States Response to Defendants Motion Pursuant to Rule 412(b) of Defendant's Intent to Offer Evidence of the Alleged Victims' Prior and Subsequent Engagement in Prostitution" (Doc, 141) disagrees. The Government "agrees that prior acts of prostitution may be relevant to determine how they ended up at the Best Choice Inn . . . [but] not relevant to a determination of whether they were recruited and enticed to the Best Choice Inn." This exact consideration was before the Northern District of Illinois in United States v. Young, 17-cr-00082, and at a hearing on defendant's motion to admit evidence under Rule 412, the defense argued that evidence of the complaining witness's prior sexual conduct rebutted allegations that Mr. Young enticed and recruited them. The district court instructed both parties to file supplemental briefs on the admissibility of the evidence. Two days later, the government filed a motion which "seeks to strike from Counts One through Six of the indictment the allegation that defendant "recruited" or "enticed" the victims." (Case: 1:17-cr-00082 Document #: 105 Filed: 01/11/18) The district court granted the motion (Doc. 109 – Minute Order Filed: 01/13/18) and ultimately allowed cross-examination of prostitution activities during the period charged in the amended indictment. This issue is of particular relevance because the only mention of Eddie Hill in the discovery pertaining to trafficking was that he purportedly "recruited" women. Accordingly, if a witness testifies that Eddie Hill recruited her to the Best Choice Inn, the defense must be entitled to fully cross-examine the witness as it pertains to the circumstances surrounding the recruitment including the witness' prior acts of prostitution.

It is important to remember that Rule 412 was enacted as part of the "Privacy Protection for Rape Victims Act of 1978" (92 Stat. 2046). The rule was revised in 1994 and the Advisory Committee Notes indicated "Rule 412 applies to both civil and criminal proceedings. The rule aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process. Notable as these safeguards are, it is averred that they should not eclipse constitutionally guaranteed protections. "Restrictions on a criminal defendant's rights to confront adverse witnesses and to present evidence may not be arbitrary or disproportionate to the purposes they are designed to serve." Michigan v. Lucas, 500 U.S. 145, 151 (1991) (internal citation and quotations omitted); see also Olden v. Kentucky, 488 U.S. 227, 231–32 (1988) (limiting

a state rape-shield law when it impinged upon a defendant's Confrontation Clause right). While the victims' prostitution experiences would not be relevant to allegations of force or threats of force used to cause the victims to engage in commercial sex acts, the Government has included allegations that the defendants utilized coercion and fraud as means to cause the victims to engage in commercial sex acts. In those instances, the victims' experiences as prostitutes and with pimps, prior to their encounters with the defendants, are relevant to the central issue of whether their employment in the commercial sex trade was procured by fraud or coercion.

The Advisory Committee Notes further state "Rule 412 seeks to achieve these objectives by barring evidence relating to the alleged victim's sexual behavior or alleged sexual predisposition, whether offered as substantive evidence of for impeachment, **except in designated circumstances in which the probative value of the evidence significantly outweighs possible harm to the victim.**" (emphasis added) It is averred that the harm of invasion of privacy, embarrassment and public disclosure of sexual behavior is diminished in this case where the victims will testify on behalf of the Government about the commercial sex acts they have engaged in to support the charges, and then being subjected to cross-examination thereof, does not equate to the similar harms suffered by a rape victim. Here the ability to cross examine the witnesses as it pertains to allegations of coercion and fraud has significant probative value and should be allowed.

## IV.    Order Disclosure of the Identity of the Jane Doe Victims:

As previously indicated, this case has been deemed complex and protective orders have been granted. (Docs. 93 & 107) The protective orders are designed to protect the victims from having their Personal Identifying Information retained or disseminated by the defendant. Nonetheless, discovery provided to date has been fully redacted, except the contents of one phone. All the interviewees have been solely identified by their initials, and there is no indication, which, if any of these persons are Jane Doe 1, Jane Doe 2, or Jane Doe 3. Obviously, there is no need for a protective order if such identifying information is not provided to counsel. Moreover, there is no potential harm if the names are provided to defense counsel and staff. In the "United States' Response to Defendants Motion for Disclosure of the Identity of the Jane Doe Victims" (Doc. 147) the Government spends nine pages discussing a wide variety of discovery obligations and limitations of production before addressing the specific requested information, i.e., the identity of the Jane Doe victims.

Further, the Government suggests that no reason has been given for requesting this information, before going on to suggest this is a fishing expedition. As the Government is well aware, the Superseding Indictment specifically includes the Jane Doe victims who are part and parcel of the Government's case in chief. The request therefore is designed to further an essential defense obligation. "The advocate for the accused has both an ethical obligation and a constitutional duty to conduct a thorough factual investigation and legal analysis." United States v. McVeigh, 918 F. Supp. 1452, 1459 (W.D. Okla. 1996) (citing ABA, Standards for Criminal Justice, Standard 4–4.1 and Commentary)

The Government states that the safety of these women is paramount, and that "some of the defendants believe that the Jane Does are being housed in a safehouse." Although the Government will neither confirm nor deny this belief, it suggests that inquiring about the location of the Jane Does is suspect, as the disclosure of such a location, even pursuant to a protective order, would endanger the victims. The Government is reminded that the prosecution may not interfere with defense counsel's ability to interview witnesses. See United States v. Carrigan, 804 F.2d 599, 603 (10th Cir. 1986) (recognizing that "both sides have the right to interview witnesses before trial" and the prosecution should "not discourage or obstruct communications between prospective witnesses and defense counsel"); United States v. Pinto, 755 F.2d 150, 152 (10th Cir. 1985) ("[T]he prosecution may not interfere with the free choice of a witness to speak with the defense absent justification by the clearest and most compelling considerations." (internal citations and quotations omitted)); United States v. Fred, No. CR 05–801 JB, 2006 WL 4079619, at *4 (D.N.M. Dec. 4, 2006) (unpublished) (noting prosecutor must not obstruct communications between witnesses and defense counsel). Undersigned counsel would agree to not disclose to any of the defendants or witnesses the location of the Jane Does and this Court should order disclosure of their names and locations.

**Conclusion:**

All of the above issues, taken in the aggregate, compel the conclusion that the defendant Eddie Hill requires a severance from his codefendants to receive a constitutionally mandated fair trial. A hearing and subsequent briefing to assist the Court is requested on these issues.

Respectfully submitted,

*Wayne Baker*
Wayne Baker, Esq.
Law Office of Wayne Baker
Counsel for Defendant Eddie Hill

I hereby certify that I filed the foregoing electronically on September 17, 2020, through the CM/ECF system, which caused counsel for the Government to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.