IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) CRIMINAL NO. 19-1631 DHU |
| vs. | ) |
| KAMAL BHULA, ET AL. | ) |
| Defendant. | ) |

**UNITED STATES' OPPOSED MOTION TO EXCLUDE EXPERT TESTIMONY OF WITNESSES McHARD AND MOHR, AND REQUEST FOR DAUBERT HEARING**

COMES NOW, the United States and hereby requests the Court exclude from trial testimony by Defendant's proposed expert witnesses Janet McHard and Beth Mohr. As grounds for this motion, the United States asserts the following:

**FACTUAL BACKGROUND**

Beginning on a date unknown, but no later than September 2017, the owners, managers, and employees of the Best Choice Inn, located at 7640 Central Avenue Southeast, Albuquerque, New Mexico, ran a sex and drug trafficking enterprise on the premises. On November 5, 2019, a grand jury charged the defendants in a ten-count superseding indictment with conspiracy to commit sex trafficking, in violation of 18 U.S.C. § 1594(c); four substantive counts of sex trafficking, in violation of 18 U.S.C. §§ 1591(a)(1) and (b)(1) and 1591(a)(2) and (b)(1); interstate and foreign travel and transportation in aid of racketeering enterprises, in violation of 18 U.S.C. § 1952(a)(3)(A); conspiracy, in violation of 21 U.S.C. § 846; maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a); maintaining a drug-involved premises within 1,000 feet of a school, in violation of 21 U.S.C. § 860(a); and conspiracy to commit

money laundering, in violation of 18 U.S.C. § 1956(h). Doc. 68. The substantive counts also allege aiding and abetting in violation of 18 U.S.C. § 2. *Id.* The superseding indictment alleged acts beginning in September of 2017 and concluding on June 18, 2019, when agents shut the operation down.

Through undercover operations, confidential sources, surveillance, and other law enforcement operations over the course of approximately a year, agents learned the illicit nature of the Best Choice Inn's operation. The typical modus operandi for the Best Choice Inn was to target and recruit females who had limited options. Their victims were females who were drug users, homeless, poor, or had other indicators that they could be recruited without any support system to notice. When recruiting these women, the management at the Best Choice Inn relied heavily on luring them with narcotics. They were one of very few hotels, if not the only one in Albuquerque, who would rent rooms to these women.

Financial and organizational documents revealed the ownership and structure of the Best Choice Inn. Pragneshkumar "Pete" Patel purchased the Best Choice Inn via his company, Saishivam Lodging, LLC, in September of 2017 and personally ran operations there until March of 2018 when Kamal Bhula took over management via his single member LLC, OMRAM. Bhula ran the Best Choice Inn until agents arrested him on June 18, 2019. OMRAM employed approximately 11 people including Bhula, Jonathan Craft, Willie Horton, and Eddie Hill. Similarly, Saishivam Lodging employed approximately nine people, five of which were also employees of OMRAM, and included Patel and Horton. Together, Patel, Bhula, Craft, Horton, and Hill managed and ran the Best Choice Inn.

On August 1, 2022, Defendant Bhula notified the parties of his intent to call Janet McHard and Beth Mohr as an experts in the field of "analyzing business and financial records,

the roles of the different individuals implicated, and offer opinions regarding the reports, testimony, evaluations, and analysis presented by the United States' witnesses (McHard). Additionally, the Defendants proposes to call an expert to testify about "police practices and interviews, false confessions and vice investigations (including prostitution and human trafficking) and her opinions and observations regarding the investigation that was conducted in this matter and the reports, testimony, evaluations and analysis presented by the United States' witnesses" (Mohr). (Doc. 313, p. 2).  Defendant attached both McHard's and Mohr's curriculum vitaes.  (Doc. 313-1 and 2).  After a review of the witnesses' listed areas of expertise in their CVs, the United States hereby contests their qualifications and methods pursuant to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

## ARGUMENT

An expert witness must be qualified to testify based upon their "knowledge, skill, experience, training, or education." Fed. R. Evid. 702.  The testimony must be based upon reliable principles and methods.  *Id*.  Given the inherent weight of an expert's testimony, a court must perform a gatekeeping function prior to admitting the proposed evidence.  *Daubert*, 509 U.S. at 597.  There can be no analytical gap between the opinion and the methodology.  *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003).  "[A]ny step that renders the analysis unreliable ... renders the expert's testimony inadmissible." *Id*. (internal citation omitted).

Based on the submitted resumes for both proposed experts, the United States acknowledges that they likely have some expertise in certain areas. And while the United States disputes they have any expertise in the areas of sex trafficking and narcotics investigations, they have some fraud or money laundering experience that may or may not be relevant to this case. However, based on the nature of their noticed-up testimony and the specific facts of this case, the

United States disputes that their respective knowledge bases would assist a jury. The United States is presently unconvinced based on the expert notice that their areas of expertise could assist a jury in what is a simple money laundering conspiracy, and therefore requests a *Daubert* hearing to more precisely and. accurately assess the relevance and admissibility of the proposed expert testimony. Furthermore, the United States notes a substantial overlap in subject matter of these two experts based on their CVs. A *Daubert* hearing would assist the parties in determining what would be cumulative if offered by both proposed experts.

With all that said, it is apparent that neither witness is qualified to give expert testimony as to police practices regarding sex trafficking and narcotics investigations. Both resumes are completely devoid of any expertise in those fields. Indeed, Ms. McHard's experience appears to be in accounting (See Doc. 313-1), but to the extent she will give opinion testimony on the different roles of the defendants without having some insight into sex trafficking and narcotics operations, the United States objects to such testimony.

In 2014, Ms. Mohr had some experience in teaching classes regarding interviewing and interrogation. Her most recent testimony is scheduled for this month (August 2022). The United States notes she gave a deposition regarding inadequate investigations in December 2021. The bulk of her other expert testimony subject matter seems to involve civil rights cases, shooting justification, police misconduct, and excessive force. (Doc. 313-2, p. 14-16) Her experience in law enforcement dates back to the late 1980s, where she received recognition for her work in a white-collar matter, a serial burglary ring, and development of a training program, all occurring during her employ with the San Diego Police Department.

While Ms. Mohr is noticed as having expertise in vice operations and human trafficking (See Doc. 313, p. 2), this does not appear to be covered in her resume. (Doc 313-2) Presumably,

as this information is absent from her resume, such experience would be during her time with the San Diego PD, which lasted only five years from 1985 to 1990. Any specialized knowledge that is over thirty years old is doubtful to still be reliable or applicable.

The United States objects outright to Ms. Mohr being a proposed expert in vice investigations and human trafficking, as well as police practices, interviews, false confessions and her overall opinion of the investigation in this case. Her experience does not support an expert designation in this subject matter.

Furthermore, it is unclear what kind of opinion testimony these experts will give regarding "the reports, testimony, evaluations and analysis presented by the United States' witnesses." (Doc 313, p. 2). Will such testimony address the United States' expert witnesses? The law enforcement witnesses? The victims themselves? Has either witness completed an audit of the business records? Did they come to any conclusions? The answers to these questions may spur further objection by the United States, thus a *Daubert* hearing is necessary.

## CONCLUSION

The United States needs further information as to what the anticipated testimony would be from these two proposed experts as it may relate to the conspiracy to commit money laundering charge. Therefore, at this time, the United States objects to the testimony as irrelevant, and requests a *Daubert* hearing to ascertain what, if any, assistance such testimony might offer a jury in this matter.

Additionally, and for the above stated reasons, the United States requests the Court exclude Defendant's proposed expert witnesses, and/or schedule a *Daubert* hearing in this matter.

Respectfully submitted,

ALEXANDER M. M. UBALLEZ
United States Attorney
*/s/ Filed Electronically 8/8/2022*
LETITIA CARROLL SIMMS
JACK BURKHEAD
Assistant United States Attorneys
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274

I HEREBY CERTIFY that on August 8, 2022, I filed the foregoing electronically through the CM/ECF system, which caused the below counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/ Filed Electronically*
Letitia Carroll Simms, Assistant U.S. Attorney