# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

      v.                                     No. 1:19-cr-01631-DHU

KAMAL BHULA, *also known as*
Rocky, JOHNATHAN CRAFT, *also
known as Jonathan Craft*, *also known as*
YN, *also known as* WAYAN, WILLIE
HORTON, OMRAM, LLC, EDDIE
HILL and PRAGNESHKUMAR PATEL,
*also known as* PETE,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

      This matter is before the Court on Defendants' Motion to Exclude Expert Testimony of Kim Mehlman-Orozco or in the Alternative to Hold a *Daubert*[1] Hearing (Doc. 308) and the Government's Opposed Motion to Exclude Expert Testimony of Witnesses McHard and Mohr, and Request for a *Daubert* Hearing (Doc. 317). The Court held a hearing on the motions on October 17, 2022. Having considered the motions, briefs, the testimony, and arguments presented at *Daubert* hearing, and the relevant law, the Court **DENIES** all motions, subject to a certain restriction concerning Ms. Janet McHard's testimony that is further described in this Order.

## BACKGROUND

      According to the Government, Defendants allegedly ran a sex and drug trafficking enterprise at a Best Choice Inn in Albuquerque from September 2017 to June 2019 under the

---

[1] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

pretense of being legitimate owners, managers, and employees. Defendants allegedly recruited unstable women into prostitution by supplying them with narcotics or otherwise exploiting their weaknesses and generated drug debts which the women had to repay by engaging in prostitution.

Defendants Pragneshkumar Patel and Kamal Bhula allegedly leased the Best Choice Inn. Mr. Patel purchased the Best Choice Inn via his company, Saishivam Lodging, LLC in September 2017 and personally ran operations until March 2018, at which point Mr. Bhula took over management via his single member company, OMRAM, LLC. Mr. Bhula ran the Best Choice Inn until agents arrested him in June 2019. OMRAM employed Mr. Bhula, Mr. Craft, Mr. Horton and Mr. Hill. At another point, Saishivam Lodging employed other OMRAM employees, including Mr. Patel and Mr. Horton.

Defendants Patel and Bhula allegedly made bank account deposits that were partially derived from illegal activities. Over a five-month period, Mr. Patel allegedly deposited about $57,000 of funds into a business bank account while Mr. Bhula deposited about $73,000 over a seven-month period. The money allegedly was used to fund the hotel's operations, salaries, payments to other coconspirators, and used for personal expenses.

Both parties filed notices of expert disclosures. The Government's witness, Dr. Mehlman-Orozco, is expected to testify about, among other things, "the clandestine nature of human trafficking crimes," "the trauma bond that exists between victims and offenders," "the impact on victims of human trafficking" and "the complex reactions of such victims due to the trauma bonding with their offender." Govt.'s Notice, 1, Doc. 267.

Defendants proffered the expert testimony of Janet McHard and Beth Mohr, who are both employed at McHard Accounting Consulting, LLC. Ms. McHard is expected to testify, among other things, about the Best Choice Inn's books and financial records. Ms. Mohr is expected to

testify about police practices and interviews, false confessions and vice investigations, including

prostitution and human trafficking.

## LEGAL STANDARDS

Federal Rule of Evidence 702 controls the admission of expert witness testimony. Rule

702 provides that:

> a witness who is qualified as an expert by knowledge, skill, experience, training, or
> education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the
> > trier of fact to understand the evidence or to determine a fact in issue;
> > (b) the testimony is based on sufficient facts or data;
> > (c) the testimony is the product of reliable principles and methods; and
> > (d) the expert has reliably applied the principles and methods to the facts of the
> > case.

Fed. R. Evid. 702.

"[T]rial courts are guided by a trilogy of Supreme Court cases," *United States v.
Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006), when evaluating the admissibility of
expert testimony: *Daubert, Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999); and
*General Electric Co. v. Joiner,* 522 U.S. 136, 142 (1997). In evaluating the admissibility of
expert testimony, "the district court must satisfy itself that the proposed expert testimony is both
reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such
testimony." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc) (quotation
marks omitted). First, the district court must "determine whether the expert is qualified 'by
knowledge, skill, experience, training, or education' to render an opinion." *Id.* (quoting Fed. R.
Evid. 702). If the expert is sufficiently qualified, the district court "must determine whether the
experts opinion is reliable by assessing the underlying reasoning and methodology." *Id.* Finally,
the court must determine whether the testimony is relevant. *United States v. Archuleta*, 737 F.3d

1287, 1296 (10th Cir. 2013). The proponent of the expert bears the burden of proof to show that the expert testimony is admissible. *Nacchio*, 555 F.3d at 1241.

Concerning qualifications of expert witnesses, Rule 702 sets forth "liberal standard" for qualifying a witness as an expert. *United States v. Gomez*, 67 F.3d 1515, 1525-26 (10th Cir. 1995). Therefore, "[i]t is not required that experts be 'blue-ribbon practitioners' with optimal qualifications." *United States v. Channon*, No. CR 13-966 JCH, 2015 WL 13666980, at *4 (D.N.M. Jan. 8, 2015) (quoting *United States v. Vargas*, 471 F.3d 255, 262 (1st Cir. 2006)).

Concerning reliability of an expert witness's opinions, the district court as part of its gatekeeping duties assess "the underlying reasoning and methodology," of the expert. *Schulenberg v. BNSF Ry. Co.*, 911 F.3d 1276, 1282 (10th Cir. 2018). In conducting this analysis, the court should consider the following factors: "(1) whether the particular theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has achieved general acceptance in the relevant scientific or expert community." *United States v. Baines*, 573 F.3d 979, 985 (10th Cir. 2009). The *Daubert* reliability factors, however, are non-exhaustive and "do not constitute a definitive checklist." *United States v. Medina-Copete*, 757 F.3d 1092, 1103 (10th Cir. 2014). The "trial judge has wide discretion both in deciding how to assess an expert's reliability and in making a determination of that reliability." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005).

Regardless of whether all the *Daubert* reliability factors are implicated, "the inquiry is always the same: '[t]o make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that

characterizes the practice of an expert in the relevant field.'" *Hollander v. Sandoz Pharms. Corp.*, 289 F.3d 1193, 1205–06 (10th Cir. 2002) (quoting *Kumho Tire,* 526 U.S. at 152) (alteration in original; footnote omitted)). The expert's conclusions are not required to be "undisputably correct." *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999), and a court's focus "generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions." *Bitler*, 400 F.3d at 1233. When the expert's conclusion "simply does not follow from the data, a district court is free to determine that an impermissible analytical gap exists between premises and conclusion." *Id*.

Finally, a court must determine if the proposed testimony is relevant. "Relevant evidence 'means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Id.* at 1234 (quoting Fed. R. Evid. 401). "[C]ourts must conduct a common-sense inquiry into whether a juror would be able to understand certain evidence without specialized knowledge." *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1136 (10th Cir. 2014) (citation and quotation marks omitted). If the jury can "draw the correct inferences from the facts presented," then expert testimony may not be required. *United Telecomms., Inc. v. Am. Television & Commc'ns Corp.*, 536 F.2d 1310, 1317 (10th Cir. 1976). Several factors guide the court's consideration in determining whether expert testimony would be helpful, including "whether the testimony is within the juror's common knowledge and experience, and whether it will usurp the juror's role of evaluating a witness's credibility." *United States v. Garcia*, 635 F.3d 472, 476–77 (10th Cir. 2011) (quoting *Rodriguez–Felix,* 450 F.3d at 1123) (internal quotation marks omitted). Expert testimony is helpful if it "advances the trier of fact's understanding to any degree." *Archuleta*, 737 F.3d at 1297. "Doubts about whether an expert's

testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions." *Id.*

## DISCUSSION

### 1.  Dr. Kim Mehlman-Orozco

The Government proffers Dr. Mehlman-Orozco to testify about, among other things, "the clandestine nature of human trafficking crimes," "the trauma bond that exists between victims and offenders," "the impact on victims of human trafficking" and "the complex reactions of such victims due to the trauma bonding with their offender." Govt.'s Notice at 1, Doc. 267.

#### A. Qualifications

The Government designates Kimberly Mehlman-Orozco as an expert in human trafficking. Dr. Mehlman-Orozco has a PhD in Criminology from George Mason University and has taught criminology at the university level. Dr. Mehlman-Orozco has published research papers, a book that focuses on various aspects of the sex trade, and authored articles in major national papers such as *The Washington Post* and *The New York Times*. The Court finds that Dr. Mehlman-Orozco is qualified to testify as an expert. She possesses relevant advanced degrees, has published papers that are relevant to her field of study, and has testified as an expert in state and federal courts, including this Court. *See United States of America v. Woods*, No. 1:17-cr-01235-WJ, 2020 WL 6508909 (D.N.M. Nov. 5, 2020) (qualifying Dr. Mehlman-Orozco as an expert on "the clandestine nature of human trafficking crimes; the trauma bonds that exist between victims of human trafficking; and the complex reactions due to trauma bonding with their offender.") Finally, Defendants raised no specific objections to Dr. Mehlman-Orozco's qualifications. The Court therefore finds that Dr. Mehlman-Orozco possesses sufficient knowledge, experience, training, and education to qualify as an expert. The Court reaches this

determination by relying on Dr. Mehlman-Orozco's advanced academic training, her publication of scholarly work, particularly her publication of peer-reviewed papers, her prior experience testifying as an expert, and Defendants' lack of an objection to her qualifications.

### B. Reliability and Relevancy

The Court finds that Dr. Mehlman-Orozco's opinions are the product of reliable principles and methods and are thus reliable. Dr. Mehlman-Orozco is trained in both quantitative and qualitative research methodologies, and she keeps up to date on research methods. In addition, she emphasizes quantitative over qualitative data, and she explained in detail the difference between the two. She uses the Michigan Law Center Human Trafficking database to arrange interviews with offenders and victims. She has published a book on sex and labor trafficking that is used by police departments, and she served as a peer reviewer for an institute that pursues grant funding and innovate research for human trafficking. Her original research has resulted in the publication of peer-reviewed scholarly papers and her research matters are accepted in her academic community. Many of Dr. Mehlman-Orozco's methods directly implicate many of the *Daubert* reliability factors, such as testing, peer review, the use of standards, and general acceptance of the expert's theory in the community, and therefore her opinions are the product of reliable principles and methods.

Turning to Defendants' reliability and relevancy arguments, Defendants argue, first, that one of Dr. Mehlman-Orozco's articles was based on a sample size of only three individuals, suggesting that Dr. Mehlman-Orozco could not extrapolate from such a small sample size. However, a small sample size does not mean that Dr. Mehlman-Orozco did not apply scientific principles. She explained that her findings were peer-reviewed and based on her review of academic literature and her personal extensive communication with the individuals in the study.

This evinces the use of a methodology, despite the small sample size. Any perceived inadequacies, such as a small sample size, go the weight, rather than the admissibility of her testimony and can be explored on cross-examination of the witness. *See Daubert*, 509 U.S. at 596.

Second, Defendants argue that Dr. Mehlman-Orozco's testimony would mislead the jury because it makes no reliable distinction between consenting sex work and non-consenting sex trafficking. However, Dr. Mehlman-Orozco did describe the differences between the types of relationships in some detail. She described Maslow's Hierarchy of Needs, a widely accepted theory in her field used to identify individual susceptible to being a trafficking victim. She also described the different methods used by traffickers to purportedly control victims, such as trauma bonding, which involves keeping a victim indebted or bonded without using physical force, or debt servitude, which involves keeping victim indebted through drug sales, false promises, and a system of reward and punishment. Dr. Mehlman-Orozco's testimony therefore reflects that she used a methodology in a drawing a distinction between consenting sex work and non-consent sex trafficking. To the extent that Defendants argue that Dr. Mehlman-Orozco has mischaracterized case facts or made inaccurate assumptions, this is a matter for cross-examination of the witness. *See In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1263 (10th Cir. 2014) (stating that the jury, not the court, evaluates the expert's "underlying data, assumptions, and conclusions"). Because Dr. Mehlman-Orozco has used a methodology in drawing her conclusions, her testimony is admissible.

Lastly, the Court must determine if Dr. Mehlman-Orozco's testimony would be relevant. In doing so, the Court examines whether her testimony is within the juror's common knowledge and whether it will usurp the juror's role of evaluating witnesses' credibility. *Gutierrez de Lopez*,

761 F.3d at 1136. The Court believes that Dr. Mehlman-Orozco's testimony would assist the jury. She stated that the public is "wildly misinformed" about sex trafficking. Mot. Hr'g Tr. 71:6, Doc. 401. Many people, she explained, wrongly believe that trafficking requires physical force or kidnapping, even though trafficking largely occurs through emotionally coercive means. This Court follows its previous finding that Dr. Mehlman-Orozco's testimony on such matters would assist the jury. *See Woods*, 2020 WL 6508909, at *5 (holding that Dr. Mehlman-Orozco's testimony about consent, the existence of trauma bonds and characteristics of victims and sex traffickers would assist the jury "[i]n light of the misrepresentations fostered by the mainstream media about sex trafficking versus consensual commercial sex[.]") Moreover, there is little risk that Dr. Mehlman-Orozco's testimony would usurp the juror's role in evaluating the credibility of witnesses. She stated that she has not reviewed case-specific facts and she acknowledged, correctly, that she will not opine on whether any Defendant actually engaged in sex trafficking. *See* Fed. R. Evid. 704(b) (prohibiting expert testimony on a criminal defendant's mental state or condition that constitutes an element of the crime charged).

In summary, the Court holds that Dr. Mehlman-Orozco possesses the requisite qualifications to testify as an expert and that her opinions are reliable and relevant under Fed. R. Evid. 702.

## 2.    Janet McHard

Kamal Bhula designated Janet McHard to testify as an expert concerning "the business and financial records and discovery in this case, and the roles of the different individuals implicated, and to evaluate and opine regarding the reports, testimony, evaluations, and analysis presented by the United States' witnesses." Def.'s Notice at 1, Doc. 313. Mr. Bhula's response brief to the Government's *Daubert* motion detailed the topics of Ms. McHard's testimony,

stating that she would testify about the following non-exhaustive matters: the Best Choice Inn's business practices; standard business practices of motels and how those practices vary depending on the quality of the motel; any evidence of fraud or money laundering; the Best Choice Inn's sources of revenue; methods of customer payments received by the Best Choice Inn; bookkeeping and internal controls that the Best Choice Inn used or failed to use; the roles of the individuals implicated in this case; and analysis tracing of revenue received and comparing it to rooms that were rented. *See* Def.'s Resp., 2, Doc. 332. Ms. McHard may also serve as a rebuttal witness.

### A. Qualifications

Ms. McHard is the founding partner of McHard Accounting Consulting, LLC, a position she has held since 2009. She holds a Bachelor of Arts and a Master of Business Administration from the University of New Mexico. After completing her studies, Ms. McHard then spent twelve years working in financial firms, where she held positions such as staff accountant, auditor, and senior manager. She is a Certified Public Accountant (CPA), a Certified Fraud Examiner (CFE), a Master Analyst in Financial Forensics (MAFF), and Certified in Financial Forensics (CFF). She is also a Private Investigator and a Chartered Global Management Accountant. She is part of at least 11 professional associations and committees such as the American Institute of Certified Public Accountants and Association of Certified Fraud Examiners and she has given scores of professional speeches. In addition, she has also authored or coauthored at least seven texts that have been published in industry-specific papers such as *Fraud Magazine*, *The Champion,* and other professional publications. Ms. McHard has participated as an expert witness at least several dozen times.

The Court holds that the foregoing knowledge, experience, training, and education qualify Ms. McHard to testify as an expert about the topics of forensic accounting, record reconstruction, tracing of transactions, revenue collection and reconstruction, and like topics. Moreover, the Government acknowledges that Ms. McHard "ha[s] some fraud or money laundering experience." Govt.'s Mot., 3, Doc. 317. Its principal challenge to Ms. McHard's testimony about fraud or money laundering issues is relevancy, which the Court addresses later in this Order. Accordingly, Ms. McHard is qualified as an expert on forensic accounting matters pertinent in this case.

To the extent Mr. Bhula offers Ms. McHard as an expert on the topics of sex trafficking and narcotics, the Court agrees with the Government that Ms. McHard is not qualified to testify on those matters per se.[2] Her CV does not identify those areas as topics of expertise. Ms. McHard may certainly testify, as she did at the *Daubert* hearing, about her experience reviewing financial transactions and records of illicit organizations generally. However, she may not discuss in detail sex trafficking and narcotics operations, since there is no indication that she is qualified about the hallmarks and features of such operations.

In summary, Ms. McHard is qualified as an expert under Fed. R. Evid. 702 on the topics of the Best Choice Inn's business practices; standard business practices of motels and how those practices vary depending on the quality of the motel; any evidence of fraud or money laundering; the Best Choice Inn's sources of revenue; methods of customer payments received by the Best Choice Inn; bookkeeping and internal controls that the Best Choice Inn used or failed to use; the roles of the individuals implicated in this case; and analysis tracing of revenue received and comparing it to rooms that were rented.

---

[2] It is not entirely clear if Mr. Bhula is offering Ms. McHard as an expert on these topics because his expert notice did not identify narcotics and drug trafficking as topics of her testimony.

**B. Reliability and Relevancy**

The Court holds that Ms. McHard's opinions are the product of reliable principles and methods. Ms. McHard began by noting that she has reviewed case-facts and documents, and then described the Best Choice Inn's paper bookkeeping system of tracking room rentals on index cards and tracking payments that were then reported to Mr. Bhula's accountant for tax preparation. Ms. McHard stated that common "red flags" of illicit trade are currency not being deposited into a bank and cash not being reported. Mot. Hr'g. Tr. at 83:4. To test for these red flags, Ms. McHard relied on a fraud examiners manual and an IRS field guide, and then analyzed transactions specified in the Superseding Indictment by creating a spreadsheet that compared the Best Choice Inn's revenue to bank account deposits. She determined that, with one exception, the Best Choice Inn's currency was deposited into a bank account. The Court concludes that sufficient facts and data support Ms. McHard's conclusions. In addition to relying on her extensive experience and education, Ms. McHard's described the steps she took to reconstruct the Best Choice Inn's books and her opinions are grounded in published documents, all of which constitutes a methodology. *See Bitler,* 400 F.3d at 1233 (in analyzing a challenge to an expert a court should focus upon "the methodology employed," not "upon the precise conclusions reached by the expert[.]")

In addition to being reliable, the Court concludes that Ms. McHard's testimony is relevant and will assist the jury in understanding and evaluating the Government's evidence. Forensic accounting and reconstruction of financial records is likely beyond the knowledge of average lay jurors and therefore the jury would benefit from Ms. McHard's expertise.

**3.      Beth Mohr**

Mr. Bhula designated Ms. Beth Mohr as an expert in "police practices and interviews, false confessions and vice investigations (including prostitution and human trafficking)," and expects that she will offer her "opinions and observations regarding the investigation that was conducted in this matter and the reports, testimony, evaluations and analysis presented by the United States' witness." Def.'s Notice at 2, Doc. 313.

### A.  Qualifications

Ms. Mohr is currently the managing partner of McHard Accounting Consulting, LLC, a position she has held since 2011. From 1984 to 1992, Ms. Mohr worked as a police officer and investigator in San Diego. After serving a police officer, Ms. Mohr worked as an investigator for a public defender officer in Washington from 1993 to 1997. From 1997 to 2002, Ms. Mohr worked in the field of fair housing before transitioning to a ten-year career with the City of Albuquerque. She spent five years working as an independent review investigator in the City's Independent Review Office of the Police Oversight Commission and five years working as a performance improvement manager with the City. In 2010, Ms. Mohr established Mohr Investigations, a private investigation business that she ran from 2010 – 2014. During that period, Ms. Mohr also worked at McHard Accounting Consulting, LLC, where she continues to work today.

Ms. Mohr holds a B.S. in Administration of Justice and Master's degree of Public Administration. She is a certified law enforcement instructor and certified in financial and cyber crimes, money laundering, and fraud. She also holds private investigator licenses in three states. She is a current or past member of at least 21 professional associations and committees such as the Association of Force Investigators (AFI) and Association of Certified Fraud Examiners (CFE).

She has authored or coauthored at least 15 articles in publications such as *The Champion*, *Defense News: The Legal News Journal for New Mexico Civil Defense Lawyers, Financier Worldwide Magazine*, among others. She also contributed a chapter about cognitive bias in a book called The Art of the Investigation Revisited. She has participated as an expert in at least 18 cases in state and federal courts.

The Court holds that the foregoing knowledge, experience, and training qualify Ms. Mohr to testify as an expert. Ms. Mohr has a law enforcement background and professional experience as a patrol officer in the San Diego vice unit and sex crimes unit where she gained experience with prostitution, sex trafficking, and assisted in prosecuting a serial rapist. She has testified as a police officer numerous times about prostitution, human trafficking, sex trafficking, and drug trafficking crimes. As an expert witness, she has testified at least once about police procedures and police misconduct. *See* Def.'s Notice, Doc. 313-2 at 16 (noting that Ms. Mohr testified as an expert in *Fogarty v. Gallegos,* 1:05-cv-00026-WJ-LFG on the topics of police procedures and police misconduct). Her CV also notes that she has been retained in other cases that have either settled or are pending. *See id.* (retained as expert in *Arthur v. Roosevelt Cnty.*, 1:21-cv-00513-MV-LF on the topics of wrongful arrest, inadequate investigation, inadequate training) (case settled)); (retained as an expert in *Zumwalt v. Evans,* 1:20-cv-01276-KWR-LF on the topics of false arrest, excessive force, and civil rights) (case pending)). As recently as December 2021 she was deposed about inadequate police investigations. She has taught a class on interviews and interrogations, and she has completed a Department of Justice training in recognizing the signs of human trafficking and a New Mexico Attorney General training in human trafficking training in the hotel and casino industry.

### B.  Reliability and Relevancy

14

The Court also concludes that Ms. Mohr's proposed testimony is reliable and relevant. Ms. Mohr stated at the *Daubert* hearing that she intends to testify about three main areas: confirmation bias in the context of police practices, the difference between prostitution and human trafficking, and police interrogations in the context of human trafficking or prostitution. The Court concludes that Ms. Mohr's proffered opinions are the product of reliable principles and methods. In addition to relying on her experience, knowledge, and training recounted above, Ms. Mohr referred to academic studies, her personal review of case-facts and discovery, and her articles on matter such as police practices, among other things. Any perceived inadequacies the Government raises – such as the fact that her experience as a police officer is over 30 years old or that the bulk of her other expert testimony involve civil rights cases, shooting justification, police misconduct, and excessive force – go to the weight rather than the admissibility of Ms. Mohr's testimony. The Court also concludes that Ms. Mohr's testimony on these matters would be relevant. Average jurors are unlikely to be aware about topics like cognitive bias or police interrogations in the context of human trafficking cases, or the difference between prostitution and human trafficking. Because Ms. Mohr's testimony would assist the jury, she may testify as an expert under Fed. R. Evid. 702.

## CONCLUSION

For the reasons explained herein, it is therefore **ORDERED** that Defendants' Motion to Exclude Expert Testimony of Kim Mehlman-Orozco or in the Alternative to Hold a *Daubert* Hearing **(Doc. 308)** is **DENIED**; and that the Government's Opposed Motion to Exclude Expert Testimony of Witnesses McHard and Mohr, and Request for a *Daubert* Hearing **(Doc. 317)** is

**DENIED**. However, the Court finds that Ms. Janet McHard is not qualified to testify about the hallmarks and features of sex trafficking and narcotics operations as described in this Order.

> **IT IS SO ORDERED**.

_____

HON. DAVID H. URIAS
UNITED STATES DISTRICT JUDGE