**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

v. No. 1:19-cr-01631-DHU

KAMAL BHULA, *also known as* Rocky, JOHNATHAN CRAFT, *also known as Jonathan Craft*, *also known as* YN, *also known as* WAYAN, WILLIE HORTON, OMRAM, LLC, EDDIE HILL and PRAGNESHKUMAR PATEL, *also known as* PETE,

Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on the Government's Notice ("Notice") of Intent to Introduce Evidence as *Res Gestae* and of Prior Bad Acts Pursuant to Federal Rule of Evidence 404(b) (Doc. 274). The Government provides notice of five categories of evidence that it argues are "other crimes, wrongs or acts" of the Defendants that are admissible under Fed. R. Evid. 404(b). *Id*. at 1. The Government states that two such categories of the evidence are intrinsic to the conduct alleged in the Superseding Indictment, but provides notice under Rule 404(b) in the event the Court finds that the evidence is extrinsic. Defendant Pragneshkumar Patel, joined by Defendant Kamal Bhula ("Defendants"), oppose the admission of the evidence. Doc. 293, 307. The Court, having considered the motion, briefs, evidence, applicable law, and otherwise being fully advised, DENIES the motion in part and RESERVES RULING on the remainder of the motion.

## I. BACKGROUND

Relevant background facts concerning the evidence and theories that the parties intend to offer at trial have been set for in set forth in this Court's prior Memorandum Opinion and Orders. *See, e.g.,* Docs. 164, 225, 412, 413, 419, 428. Familiarity with the facts of the case is therefore presumed.

On May 6, 2022, the Government filed a Notice seeking a pretrial finding that the following "other acts" evidence is admissible under Fed. R. Evid. 404(b) and/or as "intrinsic" evidence: (1) evidence of drug use by third parties, and drug sales by or to parties not charged in the indictment, but occurring at the Best Choice Inn during the charged time frame, (2) evidence that the Best Choice Inn trafficked other women not named in the indictment, (3) evidence that Defendant Patel was aware of illegal activity happening at his hotel in Alabama, wherein he knowingly rented rooms to a pimp, and maintained generally the same business practices, (4) evidence that Defendant Patel's hotel in Alabama has similar online reviews to the Best Choice Inn, and (5) evidence of Jonathan Craft's domestic violence history. *See* Doc. 274 at 3.[1] The Government argues that each category of evidence is admissible under Rule 404(b). The Government also argues that the first and second categories of evidence are admissible on the additional ground that they are intrinsic to the crimes charged, and therefore may be admissible under theories of Rule 404(b) or *res gestae*.

[1] The Court does not adjudicate or decide the Government's request to admit category five, evidence of Mr. Craft's domestic violence history. The Government stated that it would attempt to introduce such evidence only in rebuttal if Mr. Craft testifies or presents evidence of his pertinent trait for peacefulness. The Court therefore believes any ruling on this issue would be premature. The prosecution may renew this argument if Mr. Craft presents evidence of his pertinent trait.

## II.
## STANDARDS FOR ADMISSIBILITY OF "OTHER ACTS" EVIDENCE

Evidence of other crimes or bad acts may not be offered to prove bad character or conformity with prior bad acts. Fed. R. Evid. 404(b)(1). Evidence of other crimes, however, may be offered to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). A prosecutor must provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it. Fed. R. Evid. 404(b)(3)(A).

A court considers the following four *Huddleston* factors when determining whether evidence under Rule 404(b) is admissible: (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the evidence's probative value must not be substantially outweighed by its unfairly prejudicial effect; and (4) the trial court must give jury instructions on the proper purpose of the evidence if requested. *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988); *United States v. Henthorn*, 864 F.3d 1241, 1247-48 (10th Cir. 2017). "This inquiry incorporates the Rule 401 relevancy and Rule 403 balancing inquiries at steps two and three, respectively." *United States v. Piette*, 45 F.4th 1142, 1157 (10th Cir. 2022) (citation omitted).

"Generally, the standard for satisfying Rule 404(b) admissibility is permissive: if the other act evidence is relevant and tends to prove a material fact other than the defendant's criminal disposition, it is offered for a proper purpose under Rule 404(b) and may be excluded only under Rule 403." *United States v. Cushing*, 10 F.4th 1055, 1075 (10th Cir. 2021) (quoting *United States v. Irving*, 665 F.3d 1184, 1211 (10th Cir. 2011)) (internal quotation marks omitted). The party seeking its admission "must precisely articulate the purpose for which the evidence is offered, and the trial court must specifically identify the purpose for which it is admitted." *United States v.*

*Hardwell*, 80 F.3d 1471, 1488 (10th Cir. 1996). To establish relevance, the moving party must demonstrate "a clear and logical connection between the alleged earlier offense or misconduct and the case being tried." *United States v. Cuch*, 842 F.2d 1173, 1176 (10th Cir. 1988) (citation omitted).

When evaluating a Rule 404(b) motion, a court "distinguish[es] between evidence that is extrinsic or intrinsic to the charged crime." *United States v. Kupfer*, 797 F.3d 1233, 1238 (10th Cir. 2015). Rule 404(b) "only applies to evidence of acts *extrinsic* to the charged crime." *Cushing*, 10 F.4th at 1075 (emphasis in original). "Evidence is extrinsic when it is extraneous and is not intimately connected or blended with the factual circumstances of the charged offense." *Id*. (citation and internal quotations omitted).

On the other hand, evidence is intrinsic when it "encompasses conduct inextricably intertwined with the charged crime such that a witness's testimony would have been confusing and incomplete without mention of the prior act." *Piette*, 45 F.4th at 1155 (citation and quotation marks omitted). "This is known as res gestae[.]" *Id*. The Tenth Circuit has "also described this kind of evidence as part and parcel of the proof of the offense ... charged in the indictment." *Id.* (citation and quotation marks omitted). Thus, the Tenth Circuit regards evidence as intrinsic when it:

- was inextricably intertwined with the charged conduct,
- occurred within the same time frame as the activity in the conspiracy being charged,
- was a necessary preliminary to the charged conspiracy,
- provided direct proof of the defendant's involvement with the charged crimes,
- was entirely germane background information, directly connected to the factual circumstances of the crime, or
- was necessary to provide the jury with background and context of the nature of the defendant's relationship to his accomplice.

*Cushing*, 10 F.4th at 1075–76. If evidence is intrinsic to the charged crime, "then Rule 404(b) is not … applicable." *Irving*, 665 F.3d at 1212.

Although intrinsic evidence is not subject to Rule 404(b), it remains subject to Fed. R. Evid. 403 balancing and will be inadmissible if it has no proper probative value. *United States v. Lambert*, 995 F.2d 1006, 1007–08 (10th Cir. 1993); *Piette*, 45 F.4th at 1155. Under Rule 403, a court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "In engaging in the requisite balancing, courts give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Henthorn*, 864 F.3d at 1256 (internal quotation marks omitted). Moreover, the Tenth Circuit "*favors* admission of all relevant evidence not otherwise proscribed." *Irving*, 665 F.3d at 1213 (emphasis in original). "Exclusion of evidence under Rule 403 [is] an extraordinary remedy that should be used sparingly … but [t]he district court has considerable discretion in performing the Rule 403 balancing test." *United States v. Merritt*, 961 F.3d 1105, 1115 (10th Cir. 2020) (citations and internal quotation marks omitted).

## III. DISCUSSION

The Court next analyzes the admissibility of categories one through four. Ultimately, the Court concludes that it will reserve ruling on the first and second categories of evidence – alleged evidence of drug use and drug sales by third parties at the Best Choice Inn, and evidence that other women were trafficked there. With respect to the third and fourth categories of evidence – Defendant Patel's alleged awareness of illegal activity at a hotel he operates in Alabama and evidence of the Alabama hotel's online reviews – the Court excludes this evidence because it is inadmissible under Fed. R. Evid. 403 and 404(b).

**A. Evidence of third-party drug use and drug sales at the Best Choice Inn.**

The Government moves to admit "evidence of drug use by third parties, and drug sales by or to parties not charged in the indictment, but occurring at the Best Choice Inn during the charged time frame." Doc. 274 at 3. According to the Government, during the investigation into this matter, officers "uncovered several instances of uncharged individuals dealing narcotics" from the motel. Doc. 274 at 5. These individuals "are referenced in discovery," and the pertinent discovery includes reports, surveillance video, and recordings. *Id*. In addition to drug sales on the premises, the Government claims that other uncharged individuals – including Jane Does 1 and 2 – were "consistently using narcotics" on the premises and also seeks to introduce evidence that third parties were using drugs on the motel grounds. *Id*.

The Government argues that evidence of drug sales and drug use by third parties on the premises is admissible under Rule 404(b), or, alternatively, as intrinsic evidence to the conduct alleged in Counts 7, 8, and 9 of the Superseding Indictment. Count 8, which is at the center of these charges, alleges that Defendants violated 21 U.S.C. § 856(a)(1), which prohibits "knowingly ... maintain[ing] any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance."[2] Count 7 of the Superseding Indictment charges Defendants with conspiring to maintain a drug-involved premises. Finally, Count 9 is based on the Drug Free School Zones Act, 21 U.S.C. § 860, which increases penalties for a § 856(a)(1) violation occurring with 1,000 feet of certain places like schools or playgrounds.

In explaining its Rule 404(b) arguments, the Government states that it intends to admit evidence of third-party drug use/sales for the purpose of proving motive, knowledge, intent, plan,

[2] To obtain a § 856(a)(1) conviction, the Government must prove "that the defendant (1) knowingly (2) opened or maintained a place (3) for the purpose of manufacturing by repackaging, distributing, or using any controlled substance." *United States v. Verners*, 53 F.3d 291, 295 (10th Cir. 1995).

and absence of mistake. The Government believes that Defendants Patel and Bhula will deny knowing about drug activity at the Best Choice Inn, that Bhula will claim he is unfamiliar with the appearance of drugs, and that Defendant Craft will argue that he attempted to stop drug dealing on the premises, or that he was following the management's instructions. The Government also states that it has trial evidence indicating that the Best Choice Inn's front desk workers were required to monitor how long guests stayed and collect fees if a guest stayed longer than a few minutes. The Government states that evidence of a fee, combined with the proffered evidence of third-party drug use and drug sales, makes it more likely than not that the Defendants "knew what was going on." Doc. 274 at 9.

Defendants respond that (1) the Government does not define "narcotics," which could include legal medical marijuana, (2) that "video surveillance" requires authentication of such evidence, (3) that "recordings" are hearsay unless a participant to the recordings testifies, and that (4) even if "there was drug use at the Best Choice Inn, this purported 404(b) evidence is completely lacking in showing that [Defendant] Patel knew that the Best Choice Inn was being used for such a purpose" and therefore the evidence is not relevant under Doc. 293 at 9; *see id.* at 13-14.

The Court will reserve its ruling on the admissibility of the evidence until trial. Evidence of third parties' alleged drug sales or drug use at the Best Choice Inn could, hypothetically, be intrinsic to the conduct alleged in Counts 7-9 or, in the alternative, qualify for admission under Rule 404(b). However, at this stage the Court refrains from making any such determination because there is simply a dearth of information about the evidentiary material the Government refers to – namely, the reports, surveillance video, and recordings. As Defendants correctly note, video surveillance generated in discovery could require authentication to be admissible and the recordings may contain hearsay. The Court therefore cannot meaningfully evaluate the pretrial

evidentiary record to rule on the admissibility of the evidence under Rule 404(b) and/or as intrinsic evidence. The Court will therefore reserve ruling on the admissibility of the evidence until trial, where issues of foundation, authentication, and relevancy can be properly evaluated in context. The Court will then determine whether the evidence is intrinsic to the conduct charged in Counts 7-9 or whether it qualifies for admission under Rule 404(b).

**B. Evidence that the Best Choice Inn trafficked other women not named in the indictment.**

The Government seeks to refer to other women who were allegedly trafficked at the Best Choice Inn, claiming that the evidence is intrinsic or, alternatively, that such evidence is admissible under Rule 404(b). Concerning the Government's arguments about intrinsic evidence, it appears that the Government wishes to make such references during witness examinations and during presentation of trial evidence. For example, the Government states that it will show the jury text messages in which other trafficked women were being discussed. In one such text exchange allegedly between Jane Doe 1 and a Defendant, Jane Doe 1 texted that she "doesn't want to end up like them, basically homeless," referring to the other trafficked women. Doc. 274 at 6. The Government states that the reference to other women is crucial *res gestae* evidence needed to examine Jane Doe 1 and that without the evidence Jane Doe 1's testimony would lose its impact and be "partially untruthful." *Id.*

Other references to the women will appear through trial evidence of Defendant Patel's statements. Mr. Patel allegedly told women that "selling their bodies … will … bring in money" and he made statements "instruct[ing] defendant Bhula to continue targeting these women because they would always pay." *Id.* When Mr. Patel made these statements, "he [did not] limit them to Jane Does one through three"; he instead instructed that "all of the women should be targeted." *Id.* at 6-7. The Government therefore seeks to inject the issue of other trafficked women during witness

examinations and presentation of trial evidence such as the text messages and Mr. Patel's statements.

Turning to the Government's Rule 404(b) arguments, the Government mostly focuses on how the evidence relates to Counts 2-5, which charge Defendants with substantive counts of sex trafficking of Jane Does 1, 2, and 3 by force, threats, and coercion. The Government provides very limited factual information about the prior conduct and Defendants' role, if any, in that conduct. It simply states that other women were "coerced in the same way as the named victims, during the same time frame, and those other women were caused to engage in commercial sex acts," and that "any information about other women the defendants have trafficked under similar arrangements at the hotel is probative." Doc. 274 at 9-10.

The Government contends that this evidence is offered for at least four overlapping purposes articulated in Rule 404(b): absence of mistake, intent, knowledge, and plan.[3] *Absence of mistake* because the evidence tends to show that the earlier conduct was not a mistake or accident but instead indicative of a larger *plan* to commit sex trafficking. *Intent* because the evidence suggests that Defendants knew how to use similar "coercive tactics" to effectuate sex trafficking. *Id*. at 10. *Knowledge* because the evidence shows Defendants knew that sex trafficking was occurring at the Best Choice Inn. The Government believes that the evidence rebuts the Defendants' anticipated defenses that they were not participants in the alleged crimes and/or that they were unaware of prostitution activity occurring at the motel. Therefore, the Government contends that "any information about other women the defendants have trafficked under similar arrangements at the hotel is probative" under Rule 404(b). *Id.* at 9-10.

[3] The Government also states that the evidence establishes preparation and motive. However, the Government does not clearly develop its arguments concerning these purposes.

Defendants oppose such references to other women. First, they state that "[u]nless women who engaged in commercial sex acts testify, there is no way of knowing that 'the debt bondage scheme' … was applied to these women nor is there any evidence that the commercial sex workers believed that they were coerced into performing sex acts for money." Doc. 293 at 9. Second, they state that it is unclear what specific pieces of evidence the Government intends to offer in support of its Rule 404(b) arguments. *See id.* at 14.

The Court reserves its ruling on the Government's request to introduce evidence of other women trafficked at the Best Choice Inn as intrinsic evidence or Rule 404(b) evidence. At this stage, the Court lacks sufficient information to meaningfully apply the *Huddleston* factors, especially the second and third factors, which require the evidence to be relevant and admissible under Rule 403, respectively. Concerning relevancy, "[t]he lynchpin of *Huddleston* relevance is similarity." *Henthorn*, 864 F.3d at 1249. Yet, all the Government says about similarity between the prior conduct and charged crimes is that the women were "coerced in the same way as the named victims, during the same time frame, and those other women were caused to engage in commercial sex acts." Doc. 274 at 10. This representation is too sparse for the Court to apply the *Huddleston* relevance inquiry. The Court cannot analyze, for example, the similarity of the prior acts with the charged offenses, the temporal proximity between the prior act and the charged offenses, the number of alleged women trafficked, or even whether each Defendant was a participant in the prior conduct. The Court also notes that the Government did not cite a single case endorsing its position that evidence of this kind is admissible under Rule 404(b). At this stage, the Government has not carried it burden to demonstrate "a clear and logical connection between the alleged earlier offense or misconduct and the case being tried." *Cuch*, 842 F.2d at 1176.

Similarly, the Court cannot meaningfully apply the third *Huddleston* factor, which requires the Court to engage in a Rule 403 analysis weighing the evidence's probative against its unfairly prejudicial effect. Given that the Government has not provided a clear and logical explanation of how the evidence is probative of absence of mistake, intent, knowledge, and plan, admitting the evidence would be highly prejudicial to Defendants. But even if the Government could make such a showing, the Court is concerned that the evidence could be unfairly prejudicial in the sense that it may "provoke[] an emotional response in the jury or otherwise tend[ ] to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *Henthorn*, 864 F.3d at 1256 (citation and emphasis omitted). Although the Court does not yet reach a firm determination on the issue, the Court will seriously consider the risk of unfair prejudice inherent in the evidence when the Court engages in the Rule 403 balancing. For now, the Court reserves ruling on whether other women trafficked at the Best Choice Inn qualifies for admission under Rule 404(b) evidence.

In summary, the Court reserves ruling on the admissibility of the first and second categories of evidence. The Court next turns to the admissibility of the evidence described in categories three and four of the Government's Notice, which is based only on Rule 404(b).

**C. Text messages indicating that Defendant Patel was aware of illegal activity at his Alabama hotel.**

The Government next moves to admit text messages between Patel and a manager or employee of his Alabama hotel that occurred in 2019. During the period of the charged crimes, Patel bought a hotel in Mobile, Alabama and eventually relocated there. Before departing, he arranged to lease the Best Choice Inn to Defendant Bhula and trained Bhula how to operate the Best Choice Inn. After Patel was federally indicted, agents seized his cell phone and recovered texts message communications allegedly capturing conversations between Mr. Patel and a contact

listed as "Alicia 3", whom the Government claims was Mr. Patel's "manager or employee" of the Alabama hotel. Doc. 274 at 11. The Government tendered text communications between Patel and Alicia 3 on five different dates between the period of April 2019 and June 2019.

Briefly summarized, the conversations allegedly show Mr. Patel and Alicia 3 discussing a room charge for a "pimp," a statement by Alicia 3 that her number for a pimp did not work, and other ensuing statements about room fees and use of the word "pimp" (April 21, 2019 conversation); a text from Alicia 3 that a customer "know he's doing illegal" but wanted a better room price, followed by Patel's response that "he need have at least two rent because of traffic go to his room." (April 28, 2019 conversation); a report by Alicia 3 that a female guest was unable to pay for her room and that the guest had "been trying to sell it to herself a couple of the guess [sic]," followed by Patel's response to lock the guest's room if she was unable to pay (April 30, 2019 conversation); a message from Alicia 3 about refunding a female guest who was "scared to stay" in a room, followed by Mr. Patel's refusal to issue a refund to the guest because she had stayed less than 30 minutes (May 1, 2019 conversation); and a text from Alicia 3 that "Drug deals and the police where [sic] here on the property," followed by Mr. Patel's response that "That's nothing to do with us police will go to any motel look for some one every day." (June 23, 2019 conversation). Doc. 274 at 11-14.

Applying the first *Huddleston* requirement, that the evidence must be offered for a proper purpose, the Government states that the text communications rebut Mr. Patel's expected defense of absence of mistake, or otherwise show his motive, intent, and plan. The Court concludes the Government has essentially failed to offer a non-propensity theory demonstrating how evidence of the text communications tends to make a particular fact of consequence more or less probable. Based on the pretrial evidentiary record, the text communications do not necessarily rebut Mr.

Patel's anticipated defense that he was unaware of drug or prostitution activity at the Best Choice Inn. As the Court will explain in more detail in its application of the second *Huddleston* factor, the communications are largely devoid of necessary context to draw the conclusion that Mr. Patel intended, planned, or had the motive to commit sex trafficking, or to show absence of mistake. Accordingly, the text communications are not being offered for a proper purpose of proving absence of mistake, motive, intent, and plan, but instead are being offered to prove that Patel had a criminal propensity. The first *Huddleston* factor therefore weighs against admitting the text messages.

The second *Huddleston* factor asks whether the evidence is relevant. To determine what evidence is relevant, the Court examines the elements of the offense. *United States v. Montelongo*, 420 F.3d 1169, 1173 (10th Cir. 2005). To obtain a sex trafficking conviction, the Government must prove beyond a reasonable doubt that Defendants used "means of force, threats of force, fraud, [and] coercion" to "cause [a] person to engage in a commercial sex act." 18 U.S.C. § 1591(a); *United States v. Palms*, 21 F.4th 689, 703 (10th Cir. 2021). To obtain a conviction under 21 USC § 856(a)(1) for maintaining a drug premises, the Government must prove beyond a reasonable doubt "that the defendant (1) knowingly (2) opened or maintained a place (3) for the purpose of manufacturing by repackaging, distributing, or using any controlled substance." *United States v. Verners*, 53 F.3d 291, 295 (10th Cir. 1995).

The Government argues that the messages are probative of Patel's knowledge of drug and prostitution activity at the Alabama hotel, and hence probative of similar activity at the Best Choice Inn. But the Government's Notice provides insufficient information that the Best Choice Inn operations bore the same hallmarks of the Alabama hotel. The central allegations against Defendants are that they used force, threats of force, fraud, and coercion to cause the victims to

engage in a commercial sex act and that they knowingly maintained a drug premises. While a jury could infer that Patel and Alicia 3 were discussing sex work given the frequent use of the word "pimp" and ensuing discussions about room rates, the communications are mostly devoid of discussions about *coercion*. For example, Alicia 3's outgoing message that a "pimp call he wants to get a room," says nothing about coercion that causes a person to engage in a sex act. Doc. 274 at 11. A jury viewing these text messages therefore would use them as a basis to conclude that because Patel previously discussed "pimps," room rates, and other matters, that he must be guilty now, which is forbidden propensity evidence under Rule 404(b).

Other factors also indicate that the text messages are not similar enough to the crimes charged to be admissible. Although Patel did allegedly operate the two motels in the same timeframe, the motels were not in "geographical proximity" which weighs against a finding of similarity. *United States v. Mares*, 441 F.3d 1152, 1158 (10th Cir. 2006) (stating that temporal and geographic proximity are non-exhaustive factors that a court considers when evaluating similarity). This case also lacks evidence of "physical similarities," because the prior conduct consists largely of text communications. *United States v. Zamora*, 222 F.3d 756, 762-63 (10th Cir. 2000) (robbery and attempted robbery similar where they shared the same physical similarities, occurred close in time, in the same town, and were perpetrated by the same individuals). In summary, the second *Huddleston* factor weighs against admission of the statements.

The third *Huddleston* factor requires that the evidence's probative value must not be substantially outweighed by its unfairly prejudicial effect. The Court concludes that this factor weighs heavily against admission of the evidence. Presenting the communications to the jury would result in "unfair prejudice" and "confusing the issues." Fed. R. Evid. 403. Unfair prejudice because the text messages lack necessary context, are frequently unintelligible, and replete with

inflammatory language and references to "pimps." The cumulative effect of displaying the texts to the jury would be to "provoke[] an emotional response in the jury or otherwise tend[ ] to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *Henthorn*, 864 F.3d at 1256. In addition, the messages would be far more prejudicial than probative for the additional reason that it would confuse the issues. The Government requests to use the messages in its case-in-chief as substantive evidence of guilt and not simply as impeachment evidence should a witness testify that Patel could not have engaged in criminality. The Court has a real concern that presenting the text messages would essentially allow the jury to convict Patel, not for sex trafficking and maintaining a drug premises, but for other uncharged activity in Alabama. The third *Huddleston* factor weighs against admitting the evidence.

"The fourth and final *Huddleston* factor requires the district court, upon request, to instruct the jury to consider the evidence only for the purpose for which it was admitted." *Id.* The Government states that if "Defendants so request, the United States agrees to a limiting instruction." Doc. 274 at 18. Defendants have not requested a limiting instruction, so at this stage the final *Huddleston* factor is neutral.

A weighing of the *Huddleston* factors shows that three factors – proper purpose, relevancy, and probative value versus unfair prejudice – weigh in favor of excluding evidence of the text communications while the fourth factor, liming instructions, is neutral. The Court therefore concludes that the evidence is inadmissible under Rule 404(b). The Government's request to admit the messages is denied and Defendants' objection to the evidence is sustained.

**D. Online reviews of the Alabama hotel.**

According to the Government's Notice, Patel's Alabama hotel and the Best Choice Inn had similar online reviews. The Government contends that the online reviews demonstrate that Patel

and Bhula were "on notice" of criminality occurring at the Best Choice Inn and are probative of Patel's larger scheme or plan to purposely establish and operate motels in "bad neighborhood[s]." Doc. 274 at 14, 15.

The Court denies the Government's request to admit online reviews of the Alabama hotel under Rule 404(b). The reviews were posted at different motels located in geographically distinct areas, which weighs against admitting the reviews. Defendants also claim, persuasively, that the reviews are hearsay. The obligation of establishing the applicability of a hearsay exception falls upon the proponent of the evidence. *United States v. Samaniego*, 187 F. 3d 1222, 1224 (10th Cir. 1999) (citation omitted). To the Court's knowledge, the Government identified no exception in the rules of evidence that would permit the hearsay to be admitted and thus there is no foundation for this material to be admitted.

Even if the reviews were similar, the Court excludes them on the additional ground that the probative value of the reviews would be substantially outweighed by a danger of unfair prejudice and confusing the issues under. Fed. R. Evid. 403. Presenting the reviews would confuse the issues because the jury would see irrelevant online reviews for an Alabama motel that no other defendant has a connection to other than Mr. Patel. The reviews would also adversely affect the jury's attitude towards the defendants wholly apart from its judgment as to guilt or innocence. The Government has not carried its burden to demonstrate that the online reviews are admissible under Rule 404(b), and therefore the Government's request to admit this evidence is denied and Defendants' objections to the evidence are sustained.

## IV.
## CONCLUSION

For the reasons explained herein, the Government's Notice of Intent to Introduce Evidence as *Res Gestae* and of Prior Bad Acts Pursuant to Federal Rule of Evidence 404(b) **(Doc. 274)** is

DENIED in part. Specifically, the Court denies the Government's request to admit the third and fourth categories of evidence as described in its Notice. The Court RESERVES RULING on the remainder of the Government's requests.

**IT IS SO ORDERED**.

HON. DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE