IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL NO. 19-1631 DHU |
| | ) | |
| vs. | ) | |
| | ) | |
| **KAMAL BHULLA, et al**. | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION IN LIMINE TO LIMIT IMEACHMENT**

As the Court is undoubtedly aware, P.M. is a named victim in the pending indictment charging the Defendants with, inter alia, sex trafficking. Doc. 68. P.M. found herself as a sex trafficking victim as they all do—she was chosen because she is vulnerable, lacks housing stability, battles addiction, and has developed a mistrust of law enforcement due to her past experiences. Ironically, the very vulnerabilities that led the Defendants to target P.M. in the first place will also allow them to feast on her when she testifies at trial. As surely as night follows day, P.M. will be subjected to a withering and demeaning cross examination, all in an attempt to portray her as a liar in the eyes of the jury. She will have several lawyers machine gun her with questions about her drug use, her prior criminal history, and the assistance the United States has provided in securing various services for her.

Certainly, these topics are permissible inquiries for impeachment, and the United States has no legal objection to the Defendants posing appropriate questions to her relating to that subject matter. For the Defendants, however, that is not enough. The also seek to ask her about other reputed "benefits" she received from the Government to which she is unaware. Specifically, the Defendants claim that P.M. received a "benefit" from the Government when

1

representatives from the United States did not report her to state probation for violating her conditions of release.  By way of this motion, the United States respectfully requests that the Court forbid the Defendants from delving into that topic at trial.

The genesis of the Defendants' claim was P.M.'s testimony on January 25, 2023, which was offered in connection with the Defendants' ill-fated *Motion to Disqualify AUSA Letitia Simms*.  Doc. 448.  At that hearing, the following exchange took place:

**Mr. Gorence**:  I want to touch on that one sec. Is there anything today, [P.M.], that affects your memory or recall? Are you impaired in any way today? Under the influence of anything? And I don't need to know what, but is your memory good today or are you impaired to whatever degree today as you testify?

**P.M.**: I use drugs every day.

**Mr. Gorence**:  And I understand that, but I'm just asking about your memory. And I'm not asking you to say anything about drug use. But is your memory impaired today to some degree by virtue of what you just said?

**P.M**. No. I mean, I remember it.

*Transcript,* 1/25/23 hearing at p.56.

P.M. offered no details beyond that concerning her drug use, and no further testimony was elicited at the hearing concerning P.M.'s drug use.  Thus, the entire foundation of the Defendants' request rests on the snippet provided above.

<u>P.M's State Case</u>

The Defendants surmise that P.M's reference to drug use was made relevant twenty-two days earlier when she appeared before Judge Bruce Fox in the Second Judicial District Court for an arraignment on charges of receiving/transferring a stolen vehicle.  At that time, Judge Fox

released P.M. on her own recognizance subject to certain conditions of release including that she "not buy, sell, consume, or possess illegal drugs." (*See* Exh. A). Thus, the Defendants posit that P.M.'s reference to "drug use" during the January 25, 2023, hearing constitutes irrefutable evidence that she violated her state conditions of release.[1]

### The Defendants' Intent to Impeach P.M.

When P.M. testifies at trial, the Defendants do not wish to simply question her about drug use, her criminal history, or the assistance she has received from the Government. In addition to all of that, they wish to create another "benefit" out of thin air by claiming the United States had an affirmative duty *to turn her in*. Without pointing this Court to any authority at all, the Defendants claim that at some point after January 25, 2023, the United States had duty (a duty that apparently does not extend to the five defense attorneys, the Court, the Court's staff, the Court's security personnel, or the several United States Marshals in the room when she testified) to contact state probation and inform them that P.M. admitted to using drugs. The United States' failure to do so, in their view, is fair game for impeachment.

In response, the United States first represents to the Court that no promises, representations, or assurances were extended to P.M. with regard to her state case, including her conditions of release. She has been, and will remain, on her own in connection with that matter. In that regard, the United States has been in contact with no state entity – the police department, the court, or state probation – asking that any special favors be extended to P.M. on any aspect of her state matter. Just as the United States did not turn her in, as the Defendants claim we must,

---

[1] As it turned out, P.M. violated her conditions of release a different way on February 28, 2023, by not keeping in contact with her pre-trial services officer. Based on that, the state court issued a warrant for her arrest on March 2, 2023. To the best of the United States' knowledge, that warrant remains active, and the Government has done nothing to interfere with the process unfolding in state court in connection with that warrant.

we also have not asked any state authority to refrain from taking whatever action they deem appropriate.

To be sure, the *Brady* rule requires prosecutors to disclose any benefits that are given to Government witnesses, including any lenient treatment.  See, e.g., *Giglio v. United States*, 405 U.S. 150, 154-55 (1972); *United States v. Bagley*, 473 U.S. 667 (1985) (impeaching as well as exculpatory evidence favorable to the accused must be disclosed under Brady); *Kyles v. Whitley*, 514 U.S. 419 (1995) (government has duty to disclose exculpatory evidence even without a request). The Ninth Circuit has succinctly explained the reason why prosecution-provided benefits constitutes Brady material:

> Disclosure of an agreement to provide such benefits, as well as the benefits themselves, could have allowed the jury to reasonably conclude that [the witness] had a motive other than altruism for testifying on behalf of the State.  Such a finding could have substantially impeached [the witnesses'] credibility as a witness.
> *Benn v. Lambert*, 283 F.3d 1040, 1057 (9th Cir. 2001)

Thus, the proper resolution of this Motion hinges on whether the United States provided a "benefit" to the Defendants by inaction, i.e., not alerting state probation and parole as to P.M.'s testimony.  The Southern District of New York addressed this issue in *United States v. DiPietro*, 04-cr-1110; 2009 U.S. Dist. LEXIS 103431 (9th Cir. Nov. 6, 2009), a case where the defendant claimed that a "federal prosecutor's failure to disclose an allegation that a witness committed statutory rape to state law enforcement authorities allowed the witness to escape punishment for this serious crime, and explains the witness's willingness to say anything that the Government would find helpful." *Id*. at *14.  In assessing this claim, Judge Cote found that "[a]s for the Government's obligation to refer the witness to the state authorities for prosecution or the

motivation of the witness to assist the Government, DiPietro has failed to show that the allegation was sufficiently reliable to trigger any duty to investigate it further or to explain the witness's motivations." *Id*.

The same holds true here. First, in reading the transcript of the hearing, P.M. responded to a question from defense counsel concerning whether her memory was impaired with "I use drugs every day." Defense counsel did not ask the follow up question concerning what drug(s) she uses, whether she has a prescription to use those drugs, and whether the drugs she was referring to are illegal. That is key here because P.M.'s conditions of release forbid her from using "illegal drugs," *see* Exh. A, and it is altogether possible that P.M.'s response of "I use drugs every day" could have referred to methadone, suboxone, alcohol, marijuana, cold medicine, or other legal substances that, while not constituting a violation of her state conditions, could nevertheless impair her memory. Thus, this Court has the same reliability issue that Judge Cote faced in *DiPietro*. The trial testimony offered by P.M. shed no light on what kinds of drugs was P.M. using, or whether use of those drugs would constitute a violation of her state conditions of release. Without answers to these questions, the answer provided by P.M. that "she uses drugs every day" is not, in and of itself, *prima facie* evidence of a violation of her conditions of release.

Given those unanswered questions, the Defendants seem to suggest that the United States nevertheless had no duty to open a full-blown investigation of P.M. to determine if she had, in fact, violated her state conditions of release. It is difficult to discern precisely what investigation the United States could perform to discharge the duty the Defendants claim exists. A blood test? A hair test? A *Miranda* interrogation of a crime victim? A search warrant of her residence? A wiretap? Subpoenas to methadone clinics? Apart from in-court chest pounding, the Defendants

have provided no authority mandating that the United States create the adversarial relationship between it and its witness that the Defendants dearly wish to create.

Moreover, the Defendants have yet to shed any light on how the supposed failure of the United States to contact state probation motivated P.M. To be sure, the United States never told P.M. that it would keep her drug use a secret from state probation, which, if that had happened, could have provided some marginal incentive for P.M. to skew her testimony. Along those same lines, P.M. did not ask the United States to keep state probation in the dark about any drug use. Indeed, the nonexistence of any conversation between the Government and P.M. concerning her drug use demonstrates the absurdity of the Defendants' claim. To them, the issue of her drug use was so profound in P.M.'s mind that the United States' decision to not make a phone call could materially alter her testimony, yet not quite profound enough for her to bother to ask about it. Of course, that position makes no sense. What matches both common sense and the reality of this case is that, to P.M., her state conditions of release are inconsequential to the substance of her upcoming trial testimony. That being the case, no serious argument can be made that the issue raised by the Defendants touches upon *Giglio*.

Furthermore, inquiring about violating her conditions by using narcotics is not proper impeachment under the rules of evidence. P.M.'s pending state case is not admissible under any rule of evidence, and any speculative violation of her conditions of release does not amount to an act of dishonesty. See Fed.R.Evid. 608. In fact, if the parties to this case can agree to anything at all, it would be that P.M. was eye-popping honest about her drug use when defense counsel asked. While the use of narcotics is fair game for impeachment, framing it in terms of whether it violates her current conditions of release is not. The impeachment is complete on the drug-use aspect alone. Delving into the existence of a pending case contributes nothing to the

impeachment other than to inject inadmissible character evidence, and therefore violates both Fed.R.Evid 608 and 403.  The defendants should not be allowed to present inadmissible character evidence by bootstrapping it to a made-up *Giglio* benefit, of which P.M. has no knowledge whatsoever.

      WHEREFORE, the United States respectfully requests that the Court forbid counsel for the Defendants from asking any question or making any argument concerning an alleged failure by the United States to inform state probation about P.M.'s drug use.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

   /s/ April 3, 2023
LETITIA CARROLL SIMMS
JACK BURKHEAD
Assistant United States Attorney
PO Box 607
Albuquerque, NM 87103
(505) 346-7274