IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>　　　　　Plaintiff,　　　　　　)<br>  )　　Cr. No. 19-1631 DHU<br>vs.　　　　　　　　　　　　　)<br>  )<br>**KAMAL BHULA ET AL.,**　　　　)<br>  )<br>　　　　　Defendants.　　　　　)  | |

**UNITED STATES' RESPONSE TO DEFENDANT
JOHNATHAN CRAFT'S MOTION FOR USE OF SPECIAL QUALIFIED JURY LIST
PURSUANT TO THE COURT'S MODIFIED JURY PLAN (2015) SECTION 5(b)(1)**

The United States responds to *Defendant Johnathan Craft's Motion for Use of Specialized Qualified Jury List* (Doc. 522) as follows:

After nearly four years of exhaustive investigation and preparation, the Court convened this matter for trial on April 24, 2023. The lead up to that trial witnessed comprehensive litigation that included no fewer than 20 substantive defense motions that spanned somewhere in the neighborhood of 138 pages. Despite being aware of the unique demographics of New Mexico and the ethnicity/race of their respective clients, the Defendants devoted precisely zero of those pages challenging the District of New Mexico's current Modified Jury Plan.[1]

Rather than challenge the plan in pre-trial litigation, the Defendants instead opted for gamesmanship. As the venire flowed into the Mimbres Courtroom, the Defendants scanned each and assessed whether the group passed their preconceived subjective notion of what constituted

---

[1] The current plan was promulgated on October 27, 2015. See Misc. No. 15-MC-04-42.

an acceptable panel. To be sure, if the panel passed the Defendants' eyeball test then the trial would have proceeded as scheduled without nary a word about the alleged infirmities of the Modified Jury Plan. As it turned out, the panel failed in the Defendants' eyes, so an impromptu challenge was lodged. After spirited argument, the Court continued the trial to allow the Defendants to investigate whether the District of New Mexico's Modified Jury Selection Plan passes Constitutional and statutory muster.

With that investigation unfolding in real time, the Defendants have filed the instant motion which asks the Court to provide them the remedy they seek in the yet unfiled and unadjudicated motion. Putting the cart before the horse provides the Defendants with their last-best chance to get the jury they desire because, as they undoubtedly know, historical challenges to the District of New Mexico's various Jury Selection Plans have not been fertile ground for defendants. See *United States v. Hayworth*, 948 F.Supp. 981 (D.N.M., Nov. 21, 1996; J. L. Hansen); *United States v. Glenn Dell Cook and Paul Othello Smalls*, No. 06-2403 RB, Doc. 443 (D.N.M., Oct. 2, 2008; Hon. J. Brack); *United States v. Donald Scott Taylor*, 663 F. Supp.2d 1157 (D.N.M., Oct. 9, 2009; Hon. W. Johnson); *United States v. Blake*, 2012 WL 13081285, at *2 (D.N.M., May 8, 2012; Hon. R. Brack); *United States v. Karl Thompson*, No. 19-1610 MV, Doc. 291 (D.N.M. June 25, 2021; Hon. M. Vazquez). Rather than risk the same fate, the Defendants have filed the instant motion, which is no more than a transparent mechanism to get the relief they seek without having to demonstrate any Constitutional or statutory defects with the Modified Jury Plan.

Sound and good reasons exist to deny this motion.

<u>The Defendant has no Right to a Petit Jury of any Particular Composition</u>

First, the instant motion seeks to vindicate a nonexistent right. What the Defendants want

is to have a petit jury with a particularized makeup. But, it is well settled that "a defendant has no right to a grand or petit jury of any given demographic composition, but only to jury panels selected from a source reasonably representative of the community." *United States v. Yazzie*, 660 F.2d 422, 426 (10th Cir. 1981); *United States v. Gault*, 141 F.3d 1399, 1402 (10th Cir. 1998) ("[T]he jury actually chosen does not have to mirror the community."). The only conceivable basis to grant the relief the Defendant requests is to ensure that the petit jury composition meets with the Defendants' approval.

Certainly, parties in litigation are free to desire that the jury pool be comprised in a certain way, but they have no cognizable right to compel a court to make it so. Thus, this Court should not put its thumb on the scale to vindicate a right that does not exist.

<u>The Defendants Will Likely Fail on any Claim Challenging the Modified Jury Plan</u>

Second, the likelihood is low that the Defendants will prevail on the anticipated motion challenging the Modified Jury Plan. To do so, they must satisfy the following three part-test: "(1) the group alleged to be excluded is a distinctive group in the community"; (2) "the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community"; and (3) "this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Yazzie*, 660 F.2d at 425-26, quoting *Duren v. Missouri*, 439 U.S. 356, 364 (1979).

While the Defendants are obviously members of distinctive groups, there is no *prima facie* evidence that (1) the representation of those groups in venires from which the juries are drawn is not fair and reasonable or (2) this representation is due to systematic exclusion of the group in the jury-selection process. Looking at the first point, the Defendant's sole contention is that there must be a flaw in the system because his venire included no African Americans. That

argument ignores, however, the real-world realities of New Mexico demographics. Quite simply, the groups to which the Defendants belong account for a small percentage of the overall population. According to the last census, the total African American population accounted for just 2.7% of the total population of the state. A subset of those are ineligible for service – some are under 18, some are felons, and some are not citizens – thus the jury eligible percentage is somewhere beneath 2.7%.

Given the mathematical realities of New Mexico, the Court should expect few African Americans on any venire, and it should expect none on a sizeable portion. That, standing alone, is not evidence of an unfair and unreasonable process—instead, it is simply applied mathematics. Giving the Defendants the benefit of every doubt by accepting that the eligible jury pool consists of 2.7% African Americans, the probability of drawing no African American breaks down as follows:

| Venire Size | Odds of No African Americans |
| --- | --- |
| 40 | 33.5% |
| 50 | 25.4% |
| 60 | 19.3% |
| 70 | 14.7% |
| 80 | 11.1% |
| 90 | 8.5% |
| 100 | 6.5% |

As the Court correctly observed on April 24, it is not rare for venires in the District of New Mexico to have no African Americans. That is not because the system is flawed; rather, it is because of the laws of probability are immutable. Just as a blackjack player cannot claim the deck is stacked if she loses 10 hands in a row, the Defendants cannot make their fair-and-reasonable case simply by observing no African Americans were on a specific venire. It takes something more to meet this prong, and the Defendant has not yet presented any evidence or

argument that demonstrates the District of New Mexico's Modified Jury Plan draws its pool in a way that is not fair and reasonable.

Turning to whether this representation is due to systematic exclusion of the group in the jury-selection process, the Defendants have thus far provided nothing to the Court indicating anything of the sort is happening. Certainly, the lesson of *Hayworth*, *Cook, Taylor*, *Blake*, and *Thompson* is that the various plans used in the District of New Mexico are Constitutionally and statutorily sound. Indeed, the United States is unaware of any defendant ever successfully challenging the process by which the District of New Mexico selects its jury wheels. Perhaps Messrs. Craft and Bhula will succeed where many other have failed, but it is no stretch to suggest that it is very unlikely that they will do so.

Perhaps recognizing the hard truth of the burden that lies ahead, the Defendants instead have chosen to ask for the remedy before proving the claim. Indeed, if the Court grants this motion there will be no need for the Defendants to file a challenge to the Modified Jury Plan because they will have achieved their goal. Just as a Court should not prohibit the Government from introducing evidence before adjudicating a motion to suppress, it should not radically alter the jury selection process without first determining if the time-honored procedure is flawed.

<u>Granting the Motion Will Disenfranchise Hundreds of Thousands of Potential Jurors</u>

According to the 2020 Census, the 22 counties that comprise the Northern Division has a total population of 1,529,642 people, 44.6% of which live in Bernalillo County. Thus, the population of the counties the Defendant wishes to exclude from his pool is 847,976 people. While not all of those are jury eligible, it is evident that, should the Court grant the motion, hundreds of thousands will be deprived of any opportunity to serve on the jury.

The Court should apply nothing less than the strictest of scrutiny before disenfranchising

hundreds of thousands from the opportunity to serve on a jury. Instead of providing any compelling justification to do so, however, the Defendants do nothing more than complain that other Districts employ different criteria for "pulling jury lists." Doc. 522 at p.5. Specifically, the Defendants point out that some Districts "supplement their prospective jury panels with lists of prospective jury panels with lists of prospective jurors from driver's license and state identification lists." *Id*. The Defendant ignores, however, that the use of voter lists to draw prospective jurors has been blessed by the Tenth Circuit. See *United States v. Gault*, 141 F.3d 1399, 1403 (10th Cir. 1998) and *United States v. Yazzie*, 660 F.2d 422, 427 (10th Cir. 1981). The fact that the Defendants disagree with the law provides no basis for this Court to implement the radical procedure they demand.

  WHEREFORE, the United States respectfully requests that the Court deny the motion.

                Respectfully submitted,

                ALEXANDER M.M. UBALLEZ
                United States Attorney

                ***Electronically filed May 5, 2023***
                LETITIA CARROLL SIMMS
                JACK BURKHEAD
                Assistant United States Attorney
                Post Office Box 607
                Albuquerque, New Mexico 87103
                (505) 346-7274

I CERTIFY that a true copy of the foregoing
pleading was provided to the Court,
via CM/ECF, this 3rd day of
May 5, 2023.

   /s/
Jack E. Burkhead
Assistant United States Attorney