IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cr. No. 19-1631 DHU |
| | ) | |
| **JOHNATHAN CRAFT**, **et al**., | ) | |
| | ) | |
| Defendants. | ) | |

## UNITED STATES' MOTION TO DETERMINE STANDING TO CHALLENGE DISTRICT OF NEW MEXICO'S MODIFIED JURY PLAN

By way of this motion, the United States respectfully requests that the Court determine if Defendant Craft has standing to challenge the District Court's Modified Jury Plan.

### I.        INTRODUCTION

On April 24, 2023, the Court convened a jury to try Defendants Craft and Patel on the superseding indictment returned on November 5, 2019.   During voir dire, Defendants Craft and Patel orally moved the Court to strike the panel because, in their view, it did not represent a fair cross section of the community.  The Court granted the motion and continued the trial to July 17, 2023.  On May 4, 2023, the Defendants filed a motion for a special jury list in which it requested that the venire for the July 17, 2023, trial be drawn exclusively from Bernalillo County.  (Doc. 522).  The United States objected (Doc. 523; filed on May 5, 2023), and the Court subsequently granted the motion.  (Doc. 537; filed on May 11, 2023).

Choosing to litigate after he has already won, Defendant Craft has represented that he intends to move forward with a formal motion challenging the District Court Modified Jury Plan. (No 15-mc-0004; Doc. 42).  To that end, the Court has ordered Defendant Craft to file any such

motion on or before August 7, 2023.  (Doc. 555).   At a hearing on June 14, 2023, Defendant Craft advised the Court that one or more unidentified defendants with cases pending in the District of New Mexico may be intervening in this matter to join his upcoming challenge.

In anticipation of the Defendant's August 7, 2023 motion, the United States requests that this Court first determine if Craft has standing to issue any such challenge.  Such a pre-challenge determination will promote efficiency by relieving the parties of incurring unnecessary and costly expert witness fees to rebut a motion that may be otherwise moot.

As set forth below, the Government asserts that the upcoming motion is moot because the Court has already provided a remedy to Craft's anticipated motion.  As the Defendant is no longer an aggrieved party, there is no case or controversy before the Court for which a remedy can be provided that will benefit Craft.  Moreover, the mootness issue cannot be solved by recruiting other defendants to intervene because no authority exists to permit such a procedure.

## II.   ARGUMENT

### A.  The Defendant's Anticipated Claim is Moot

Article III of the United States Constitution only extends federal judicial power to cases or controversies. U.S. Const. Art. III, § 2, cl. 1. "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990).  Those who seek to invoke the jurisdiction of the federal courts must satisfy the case-or-controversy requirement. See, e.g., *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1993); *Faustin v. City and County of Denver, Colo.*, 268 F.3d 942, 947 (10th Cir. 2001).   To do this, "[p]laintiffs must demonstrate a personal stake in the outcome in order to assure that concrete adverseness which sharpens the presentation of issues necessary for the proper resolution of constitutional questions." *Lyons*, 461 U.S. at 101 (quotation omitted).   Stated

2

differently, "the hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Rhodes v. Southern Nazarene Univ.*, 554 Fed.Appx. 685, 689 (10th Cir. 2014).

All of this is just to say that a litigant must have standing to assert their claim. To meet this standing requirement, they must demonstrate "that (1) he or she has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision." *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003), citing *Phelps v. Hamilton,* 122 F.3d 1309, 1326 (10th Cir. 1997). "These three elements of standing are an indispensable part of the plaintiff's case and thus the plaintiff must support each element with the manner and degree of evidence required at the successive stages of the litigation." *Id.*

Here, Craft's anticipated motion is moot because he cannot satisfy any of those three prongs. First, he is not suffered an "injury in fact" vis-à-vis the Modified Jury Plan because his petit jury will be constructed from a special pool comprised exclusively from citizens of Bernalillo County. As such, the Modified Jury Plan is inapplicable to Craft. Even if Craft's counsel is correct that the Modified Jury Plan suppresses participation from discreet members of the community, it will not affect Craft because the Court has adopted a selection procedure different from that promulgated Modified Jury Plan. Consequently, there is no injury in fact in this case. It logically follows that if no injury exists then prongs 2 and 3 of are not satisfied. Without an injury in fact, there cannot be a causal connection between the injury and the conduct complained of (prong 2), and there is nothing further this Court can do to redress a now non-existent injury (prong 3). In short, whatever relief that Craft may seek in his motion no longer needed, consequently the issue is moot.

This remains true even if the case-at-large is still pending.  See *S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997) ("Article III mootness is 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'"; *United States v. Meyers*, 200 F.3d 715, 718 (10th Cir. 2000 ("when the injury for which an appellant seeks judicial relief disappears or is resolved extrajudicially prior to the appellate court's decision, the appellant can no longer satisfy the Article III case or controversy jurisdictional requirement and the appeal is moot.").

Indeed, so entrenched is the principle of standing that the merits of the underlying claim are irrelevant in the analysis.  All that matters is whether or not Craft has a stake in the outcome. Because the Court has already provided his requested remedy, he no longer has a stake.  Thus, even if this Court presupposed that Craft's upcoming motion may have legs, it still cannot adjudicate the motion.  See *United States v. Cotonuts*, 633 Fed. Appx 501, 510 (10th Cir. 2016 ("Without a live, concrete controversy, we lack jurisdiction to consider claims no matter how meritorious.").

Craft had a choice: he could preserve standing by subjecting himself to the Modified Jury Plan like virtually every other defendant in the District of New Mexico, or he could waive standing by asking the Court to adopt a special jury-selection procedure uniquely applicable to him.  He chose the latter.  He cannot have it both ways.  Because Craft is suffering no injury by virtue of the Modified Jury Plan, this Court can offer him no additional relief.

Having already won the war, the Court can rightly ask what more does Craft want?  The answer is obvious:  what he wants is for this Court to issue an advisory opinion invalidating the Modified Jury Plan, even if that decision would not benefit him in any detectable way.  Indeed, in the hypothetical scenario where Craft were convicted at trial and the Court subsequently

4

granted Craft's motion challenging the Modified Jury Plan, the invited error doctrine would prevent him from obtaining a new trial.  See *United States v. Deberry*, 430 F.3d 1294, 1302 (10th Cir. 2005 (the invited error doctrine precludes a party from arguing that the district court erred in adopting a proposition that the party had urged the district court to adopt).   Thus, *any* opinion this Court would issue in response to Craft's upcoming motion would be advisory.  This the Court cannot do.  See *United States v. Chavez-Palacios*, 30 F.3d 1290, 1292-93 (10th Cir. 1994) (It is clear that, at a minimum, the case or controversy limitation prohibits a federal court from rendering an advisory opinion.).[1]

        B.      Recruiting other Litigants is not Permissible

        Defendant Craft recognizes that he has significant mootness problems to overcome; indeed, co-Defendant Patel withdrew his support for the motion because he concedes that standing evaporated when the Court issued the order for a Bernalillo County jury.  For his part, Defendant Bhula never joined the motion at all.  To solve this problem, Defendant Craft has advised the Court that he is recruiting other litigants to intervene in this matter.  While short on specifics, it is apparent that Defendant Craft's intention is to persuade other defendants with cases pending in the District of New Mexico to intervene in his challenge.  If successful, it would solve his mootness problems because those defendants would not be subject to the Court's order providing for a Bernalillo-County only jury in this case.  But, the Defendant's proposed solution, creative as it may be, finds no support in law.

        The Federal Rules of *Civil* Procedure explicitly provide for intervention, *see* Fed. R. Civ. P. 24; however, the Federal Rules of *Criminal* Procedure do not.  *United States v. Carter*, No. 16-

---

[1]

20032-02-JAR, 2019 U.S. Dist. LEXIS 34406, at *3 (D. Kan. Mar. 4, 2019) (Akers has not shown, nor has the Court found, any authority for the proposition that a defendant may join in a criminal case in which he has not been charged.); *United States v. Loughner*, 807 F. Supp. 2d 828, 830 (D. Ariz. 2011) (citing *United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008) ("The Federal Rules of Criminal Procedure make no reference to a motion to intervene in a criminal case."); *United States v. Blagojevich*, 612 F.3d 558, 559 (7th Cir. 2010) (same). Along those same lines, federal statutory law provides no provision for intervention in criminal cases under these circumstances.

Despite the absence of authority providing for intervention, district courts have periodically permitted intervention by third parties in limited circumstances. For instance, intervention has been permitted to allow the press to intervene in a criminal case when a decision to close criminal proceedings to the public may affect First Amendment rights. See, e.g*., Press-Enterprise Co. v. Superior Court of California,* 478 U.S. 1, 3-4 (1986) (closure of preliminary hearing in criminal prosecution); *Press-Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 503 (1984) (closure of voir dire proceedings). Likewise, third parties have been permitted to intervene in a criminal case to challenge a request for the production of documents on the ground of privilege, see, e.g., *United States v. Bergonzi,* 216 F.R.D. 487 (N.D. Cal. 2003); *In Re Grand Jury Investigation No. 83-30557*, 575 F. Supp. 777 (N.D. Ga. 1983), or to protect other rights implicated by a particular proceeding. See*, e.g., Gravel v. United States*, 408 U.S. 606 (1972) (noting that district court allowed Senator's motion to intervene to quash grand jury subpoenas of witnesses whose testimony implicated his privilege under the Speech or Debate Clause of the Constitution).

The common denominator with all of these third-party intervenors was that no other vehicle existed for them to vindicate their rights. Thus, intervention was permitted despite the absence of any authority otherwise permitting it. This case stands in stark contrast. Here, the putative

6

intervenors, who presumably wish to challenge the District Court's Modified Jury Plan, have their own criminal case in which they can assert that claim.   Unlike the cases cited above, Craft's recruited intervenors do not need to intervene in an unrelated criminal case to vindicate their rights. Instead, it is Craft who needs them.   Without them, Craft has no way to escape his mootness problem.   The United States asserts that this is not a permissible reason to permit intervention.

A recent case out of the Eastern District of Louisiana, *United States v. Hamdan*, No. 19-60 WBV, 2021 U.S. Dist. LEXIS 39599 (E.D. La. March 3, 2021), is instructive.   In that case, the defendant lodged a challenge similar to Craft's by alleging that the method of jury selection in that District systematically excluded a sizeable percentage of African Americans.   During the litigation on that motion, the Clerk of the Court filed a motion to intervene, or, alternatively, to appear as *amicus curiae*.   Echoing what Craft will say in his upcoming motion, the Clerk of the Court argued that because the motion challenging the Louisiana jury plan could have significant implications for past, present, and future criminal cases in the District, the Clerk's Office has a legitimate interest in ensuring the appropriate factual information concerning its jury selection process is before the Court.   Both the Government and Defendants opposed the intervention.   Prior to the resolution of that matter, the Clerk withdrew its motion to intervene but pressed forward with its request to participate as *amicus curiae*.   The Court denied that motion, holding that participation by the Clerk would not be useful because the Clerk has available other mechanisms to provide the court with information, and by which the Court can obtain the information from the Clerk's Office. *Id*. at *16.

The same holds true here.   Craft's recruited intervenors have available other mechanisms by which to vindicate their interests—they can file motions in their own case.   The Court gains nothing by permitting intervention here.   Indeed, the only entity that gains anything is Craft, who,

7

by recruiting intervenors, is simply attempting to solve his mootness problem. That is impermissible justification to allow the radical step of permitting intervention is a criminal case.

Other cases addressing the propriety of intervention in criminal cases speak with one voice by holding that, in the absence of a recognized right or interest that will be directly impacted by the criminal proceeding, a motion to intervene should be denied. *See United States v. Bases*, No. 18-CR-48, 2020 WL 5909072, at *7 (N.D. Ill. Oct. 6, 2020); *United States v. Atesiano*, No. 18-20479-CR-Moore/Simonton, 2018 WL 5831092, at *4 (S.D. Fla. Nov. 7, 2018); *United States v. Sikes*, No. 4:15-CR-3128, 2017 WL 25460, at *2 (D. Neb. Jan. 3, 2017); *United States v. Cox*, No. 8:14-CR-0140-T-2 MAP, 2015 WL 13741738, at *3-4 (M.D. Fla. Oct. 7, 2015); *United States v. Collins*, No. 09-CR-155, 2013 WL 4780927, at *3 (E.D. Wis. Sept. 5, 2013); *Collyard*, No. 12-0058, 2013 WL 1346202, at *2 (D. Minn. Apr. 3, 2013); *United States v. Carmichael*, 342 F. Supp. 2d 1070 (M.D. Ala. 2004).

For example, in *Carmichael*, the government charged the defendant with drug conspiracy and money laundering. *Carmichael*, 342 F. Supp. 2d at 1071. Shortly after his arrest, the defendant set up a website related to the criminal case. *Id.* The defendant's website displayed the names and photographs of agents and informants, including the full name and multiple photographs of a DEA agent with the words "Wanted" and "Information on these Informants and Agents" in large red letters. *Id.* The agent moved to intervene, alleging that the website put him in danger and that it interfered with his ability to pursue his profession as an undercover agent. *Id.* at 1072. The Court denied the agent's motion to intervene. *Id.* at 1073. The Court found that, although the agent "may have been personally affected by [the defendant's] use of his picture on his website," the website itself was "not the issue" in the criminal case. *Id.* at 1072. Rather, the "sole purpose" of the criminal case was "the adjudication of [the defendant's] guilt or innocence." *Id.* The Court concluded that

8

the criminal case was "not the proper channel for a nonparty to resolve a collateral civil dispute with a criminal defendant," even if the collateral dispute involved matters related to the prosecution.  See *id.* at 1073.

In *Bases*, the government charged the defendants with wire fraud and commodities fraud. *Bases*, 2020 WL 5909072, at *2.  After the defendants were indicted, the lead prosecutor on the case left the Department of Justice and filed a complaint with the Office of the Inspector General alleging misconduct by the government. *Id.* The defendants filed motions related to the prosecutor's accusations. *Id.* The former prosecutor moved to intervene, arguing that his intervention was warranted "by his desire to prevent the government from slandering him in its filings and other statements in this case." *Id.*  The Court denied the motion to intervene, finding that the former prosecutor had failed to identify any provision in the Constitution or federal law that recognized the "right not to be slandered." *Id.* at *7.  Additionally, the former prosecutor had not shown "that reputational concerns may constitute an appropriate basis for third-party intervention in a criminal case." *Id.*

Here, Craft's recruited intervenors have no more right to intervene in a criminal case between the Government and himself than the parties had in *Carmichael* and *Bases*.  Indeed, a case can be made that the agent in *Carmichael* and AUSA in *Bases* had a more compelling basis to intervene than whoever Craft would like to recruit.  But, in the end, Craft's attempt to form a coalition must fail for the same reason the motions in *Carmichael* and *Bases*.  Craft's intervenors will not be members of the news media, are not third parties ordered to disclose privileged documents, and do not have standing in this case simply because Craft has criticized the District Court's jury-selection process.

## III.      CONCLUSION

The parties are on the precipice of incurring non-trivial expert fee expenses to litigate a motion that the Government asserts is moot. To mitigate the costs to the taxpayers, the United States respectfully requests that this Court expeditiously determine whether the Defendant has standing to bring such a motion in the first instance.  For the reasons stated above, the United States asserts that he does not.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

***Electronically filed June 19, 2023***
LETITIA CARROLL SIMMS
JACK E. BURKHEAD
Assistant United States Attorney
Post Office Box 607
Albuquerque, New Mexico 87103
(505) 346-7274