IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CRIMINAL NO. 19-1631 DHU |
| | ) | |
| | ) | |
| **KAMAL BHULA,** | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S**
**UNDERLINE OBJECTIONS TO THE PRESENTENCE REPORT (DOC. 599)**

The United States hereby responds to Defendant Bhula's objections to the second presentence report (Doc. 599) filed October 6, 2023. On July 13, 2023, the Defendant pleaded guilty to Count 8 of the Second Superseding Indictment, charging Maintaining a Drug-Involved Premises and Aiding and Abetting, in violation of 21 U.S.C. § 856 and 18 U.S.C. § 2. In his plea agreement, Defendant Bhula provided a robust and detailed factual basis to support his guilty plea.   It starts with him declaring under penalty of perjury that, beginning in approximately March 2018, he acted as the on-site manager for the Best Choice Inn until law enforcement shut it down on June 18, 2019. He admitted under oath that, in his capacity as a manager, he knew the tenants he rented to and persons he employed were using controlled substances in the individual rooms of the hotel and on the overall premises. He continues by admitting that he knew that that the tenants he rented to and the persons he employed were selling controlled substances in the individual rooms of the hotel and on the overall premises. Furthermore, in his signed and sworn plea agreement, Defendant Bhula stated he knew that "rampant drug use was occurring at the Best Choice In by the tenants and employees." Defendant Bhula stated "I knew that using and distributing controlled substances was one of the primary purposes of the Best Choice Inn. I nevertheless allowed it to continue." Lastly, the Defendant acknowledged in his plea agreement

that he admits there is a factual basis for the crime, and "agrees that the Court may rely on any of these facts, as well as facts in the presentence report, to determine the Defendant's sentence, including, but not limited to, the advisory guideline offense level." Doc. 579, at 3-4.

Despite that detailed factual basis, Defendant Bhula now appears to be disputing everything to which he swore to in the plea agreement.   The United States reads his objections to the PSR as a repudiation of the factual basis he offered the Court under oath. Indeed, his factual objections are all based on general claims that the evidence or allegations are untrue. It is the Tenth Circuit's position that a defendant does "not properly dispute facts in the PSR where he ha[d] only objected to the credibility or reliability of a source or information." *United States v. McDonald*, 43 F.4th 1090, 1097 (10th Cir. 2022). The Tenth Circuit noted that "[t]his is a position shared by the Fourth Circuit." *Id*., citing *United States v. Terry*, 916 F.2d 157, 162 (4th Cir. 1990)(A defendant has an affirmative duty to make a showing that the information in the PSR is unreliable and articulate the reasons why the facts contained therein [a]re untrue or inaccurate.); *United States v. Smith*, 86 F.3d 1154 (4th Cir. 1996) (finding the PSR could be relied upon when neither defendant's objections "asserted that the information contained in their presentence reports is untrue. Although both argue that the information is unreliable, they have offered no support for this conclusion other than the fact that the information is hearsay").This position is consistent with that taken by other circuits as well. See, e.g., *United States v. Gracia*, 983 F.2d 625, 629 (5th Cir. 1993) ("Presentence reports generally bear indicia of reliability sufficient to permit reliance thereon at sentencing"); *United States v. Robins*, 978 F.2d 881, 889 (5th Cir.1992) (district court may properly rely on "presentence report's construction of evidence to resolve a factual dispute, rather than relying on the defendant's version of the facts"); *United States v. Curran*, 967 F.2d 5, 6 (1st Cir. 1992) (court correctly relied on $10,000 interest calculation mentioned in the presentence report); *United States v. Skrodzki*, 9 F.3d 198, 202 (1st

Cir. 1993); see also *United States v. Gutierrez-Lara,* 2022 WL 2188536, *2 (5th Cir. June 17, 2022) (unpublished) (sentencing court is within its discretion to credit the information in the PSR over the objections by defendant); *United States v. Amado-Reyes*, 591 F. App'x 290, 291 (5th Cir. Jan. 28, 2015) (unpublished) (district court was free to adopt as fact a witness statement contained in the PSR that, on one unspecified occasion, defendant made verbal threats while a gun was visible on his waist; defendant's denial of such conduct did not constitute competent rebuttal evidence).

Keeping in mind the caselaw above, the United States will address the defendant's objections below:

## I.      Defendant's Objections to factual allegations

1. *Paragraph 12*

Regarding paragraph 12, Bhula objects to the allegation that he was involved in a conspiracy to maintain a drug-involved premises beginning no later than September of 2017. However, paragraph 12 says nothing about a conspiracy, just that he was charged with, "among other crimes," maintaining a drug-involved premises. This statement is true. Defendant Bhula was charged with maintaining a drug premises as well as with other crimes.

Paragraph 12 then contains what reads like the general starting time frame for the case generally, which was on a date unknown, but not later than on or about September 2017. The Defendant seems to be disputing the start date the United States has alleged. It seems the PSR writer, when referring to the case in general (which paragraph 12 does), references the September 17, 2017, date with the charges as a whole. This is also an accurate statement. The United States did allege a September 2017 start date to the case generally, as that is the time when co-defendant Pragneshkumar "Pete" Patel purchased the Best Choice Inn. This is also a true statement. Furthermore, Paragraph 12 seems to be giving the background for the case, not

delving into Defendant Bhula-specific details. In fact, in the very next paragraph, the PSR writer specifies that Patel managed the Best Choice Inn from approximately September of 2017 to approximately March 2018, at which time Bhula leased the property (PSR, ¶ 13). This is all a true characterization of the allegations and is consistent with Bhula's own admissions in the plea agreement. If the Defendant wants the PSR writer to clarify that Mr. Bhula is not admitting to being part of a conspiracy, but nevertheless maintained the Best Choice Inn as a drug premises, then the United States does not object to adding such a statement. However, the contents of paragraph 12 are not false nor misleading and should remain unchanged.

    2.   *Paragraph 13*

In paragraph 13, Bhula, in direct contradiction to his plea agreement, objects because, in his view, that paragraph "insinuate[es]" that he allowed tenants and employees to use drugs without recourse. Yet this is more than an "insinuation"; it is the truth to which Defendant Bhula admitted in his sworn plea agreement when he pled guilty to maintaining a drug-premises. That is what maintaining a drug premises is: allowing drug use and sales to go on, which, again, Defendant Bhula admitted under oath in his plea agreement. The factual recitation in paragraph 13 seems to be taken directly from Mr. Bhula's admission in his plea agreement. Given that, it is difficult for the United States to reconcile the plea agreement with this objection.

If the point of the objection is to point out that sometimes Defendant Bhula fired his employees when they were too intoxicated to do their jobs, then the Defendant may request to add this information. However, this information does not make paragraph 13 objectionable.

    3.   *Paragraph 14*

Defendant Bhula objects to the "selective recitation of facts as stated in in paragraph 14," stating that this recitation should not be evidence of Defendant Bhula's criminal activity. However, a plain reading of paragraph 14 describes nothing but a general acknowledgement of

police activity at the hotel—a hotel that the Defendant managed. These facts would have been admissible at trial to demonstrate Bhula's knowledge of the criminal activity at the hotel, and they just as surely are properly included in the PSR for the same reason. Paragraph 14 is factually and properly written and should remain the same.

      4.    *Paragraph 15*

In paragraph 15, Defendant Bhula indignantly objects to the "pretend drug deal playacted by DEA agents using packaged flour in the lobby of the motel."     The Defendant's cynicism aside, nothing about this transaction was "playacting." To the contrary, it was serious business undertaken by investigators to gauge whether management at the hotel was aware of the extent of crime occurring on the premises and, if so, whether they were implicitly or explicitly involved.   Such an operation would be appropriate, proper, and expected at any establishment where narcotics activity was routine. And, it was irrefutably proper at the one establishment in Albuquerque that generated more calls for service than any other. To put it bluntly, the Best Choice Inn was at the epicenter for crime in Albuquerque, so this Court should give no weight to a Defendant who was embedded in that crime to complain about police tactics. This Court is undoubtedly aware that DEA agents conduct undercover operations, and it is equally aware that they don't use real drugs when they sell to themselves within the lobby of a drug premises in front of the manager. The point of this operation was to see if Bhula was going to object to their actions. He did not. The reason he did not was because drug dealing was tolerated at the Best Choice Inn. In the previous objection, Mr Bhula admits there was all kinds of police activity at the hotel, and in this objection he plays the naïve outsider. Mr. Bhula's claim he had no idea he was witnessing anything nefarious is suspect.

The United States however does agree the sentence, "one agent handed the other agent $2500 worth of cocaine," is not actually correct. The United States does not object to correcting

this line in paragraph 15 to "one agent handed the other agent several bundles of apparent white narcotics." The United States further has no objection to the addition of facts stating that it was a sham drug deal.

     5.    *Paragraph 15 – second objection*

There is no insinuation as alleged by Defendant Bhula in Paragraph 15 regarding Michael Avila's drug dealing at the Best Choice Inn. Paragraph 15 reads very vanilla and unaccusatory towards Mr. Bhula. There is no need to change it as it relates to Michael Avila.

     6.    *Paragraph 16*

The claim that Defendant Bhula had no idea Larry Woolridge was selling narcotics is incredulous. Of any resident selling drugs at the Best Choice Inn, a strong argument can be made that he was the most prolific. Of course, Mr. Woolridge was required to pay visitor fees like any other resident of the motel. When people stayed in his room for longer than ten minutes, he was required to pay the visitor fee. When customers only went to quickly purchase narcotics, he was not assessed a visitor fee because that interaction does not take in excess of ten minutes. Mr. Woolridge is a drug dealer and made money by dealing drugs. So of course, any money used to pay rent fees is drug money.

As for the content of Paragraph 16, it states a "source" explained that management was aware of this and was paid to keep quiet. This is in fact what the source said, and Bhula does not dispute that it was said, only that he himself had knowledge of drug activity. If Mr. Bhula would like to supplement this paragraph by claiming he had no idea this is going on, he can make that request. However, Paragraph 16 is an accurate account of the facts and this content should remain.

     7. *Paragraphs 17, 18, 20 – 24, and 32.*

Again, Mr. Bhula denies knowing that Mr. Woolridge and Mr. Avila were selling drugs at the hotel. Bhula does not deny it happened, he simply denies knowledge of it. He admits to running a drug premises yet denies knowledge of any specific example of drug use or drug sales of which the United States has evidence. These paragraphs are accurate, and if Mr. Bhula wants to further document his complete unwillingness to take any responsibility in this case, despite his sworn plea agreement, he is entitled to have his position documented in the PSR. However, these paragraphs should remain in the PSR.

        8.     *Paragraphs 19 and 31*

Defendant Bhula objects to these paragraphs apparently because they don't detail everything he deems to be wrong with Jane Doe 2. In objecting to the factual provisions of a PSR, the defendant has an affirmative duty to make a showing that the information in the PSR is unreliable and articulate the reasons why the facts contained therein were untrue or inaccurate. *United States v. McDonald*, 43 F.4th 1090, 1096 (10th Cir. 2022) (quotations omitted). A mere objection to the reliability of the evidence in the PSR is insufficient to trigger a district court's fact-finding obligation. *Id.*; see also *United States v. Barnett*, 828 F.3d 1189, 1192 (10th Cir. 2016) (to state an "adequate objection," the "defendant must do more than simply state that he objects to the PSR's bottom line"); cf. *Leeper v. United States*, 1988 WL 142429, *2 (D. Kan. Dec. 23, 1988) (unpublished) (vague charges of factual error do not implicate the court's power to resolve factual disputes about the PSR). Even where the defendant does make objections, the court may properly adopt the PSR after considering those objections. See *United States v. Burkins*, 596 F. App'x 685, 691 (10th Cir. Dec. 23, 2014) (unpublished) (citing *United States v. Wilson*, 545 F. App'x 714, 716-17 (10th Cir. Sep. 19, 2013) (unpublished)).

In these paragraphs, the PSR simply states what Jane Doe alleged. They do not adopt those allegations as truth, but simply record what the allegations are. Mr. Bhula cannot dispute

what the allegations are, and these paragraphs are a true and accurate representation of the allegations in this case. However, Defendant Bhula uses his objections to the PSR as an opportunity to once again take aim at her by insisting that the PSR-writer engaged in dragging her through the proverbial dirt. The reason Bhula and the co-defendants' scheme worked for two years is because they victimized people who were struggling on their own. They took advantage of the drug addicts and the sex workers who had no place to stay. These are the people no one believes. If these people were so prevalent in the neighborhood, they might as well make money off their misfortunes. Certainly no one would believe anything a drug-addicted sex worker had to say, right? The common denominator in most investigations involving sex trafficking is that Defendants can (and do) routinely take direct aim at the victims. It is a sad fact that in 2023 not everyone can agree that even drug-addicts and sex-workers enjoy the protection of the law. This objection is just another one of the endless examples of that:    Defendant Bhula points out that Jane Doe 2 was addicted to drugs, that she was a sex worker prior to living at the Best Choice Inn,[1] and that she's not a geography scholar.[2]  The United States has never disputed any of this but disagrees that it is appropriate to assassinate her character on this basis, or for the court to make a factual finding contrary to her allegations.

Bhula states in his objections that Paragraph 19 and 31 is void of the circumstances wherein Jane Doe 2 gave her statement. This is not true. The very beginning of the paragraph states that Jane Doe 2 was working as a prostitute when she was arrested for drug possession. In fact, Defendant Bhula is not even mentioned in Paragraph 19. Yet he takes the opportunity to call Jane Doe 2 a liar because she didn't know he was from South Africa. He is asking now that the

---

[1] The Court has already properly ruled in this matter that Rule 412 and established caselaw deem this fact irrelevant to defending the charges in this case.

[2] Defendant Bhula also complains Jane Doe 2 couldn't name the president of the United States, however upon listening to her actual interview, it's clear she does indeed know who the president was in 2019.

PSR be amended to note a lack of credibility to Jane Doe 2's statement. This is inappropriate and this objection should be overruled.

       9.     *Paragraph 25*

The content of paragraph 25 is an accurate description of what the two housekeepers reported since the inception of the case. It is far from a misrepresentation of what the evidence in this case would be. Defendant Bhula objects to these facts because he does not like them. It is true that many of the sex workers and drug dealers did not always allow housekeeping into their rooms, however the housekeepers' report is overwhelmingly consistent with the evidence in the trash pull by DEA. Furthermore, it was not unusual for sex workers to switch rooms several times over the course of the indictment period, as evidenced in Jane Doe 1's text messages. Furthermore, almost all crime necessitates the use of items that are legal to own. Of course, it is legal to have and use condoms, and society benefits greatly from condom use. But it doesn't mean it's not relevant evidence. Paragraph 25 is an accurate description of what the evidence is in the case and should not be supplemented with argument about whether condoms are evidence of sex trafficking, or hair splitting regarding how often the rooms were turned over.

      10.     *Paragraph 28*

The United States is unclear what the specific objection is to this paragraph and requests further clarification.

      11.     *Paragraph 30*

This paragraph would be more accurate if it noted that the ruse drug deal involving DEA in the lobby of the Best Choice Inn involved sham narcotics. Other than that, this is an accurate summary of the activity in this matter. If Defendant Bhula would like to repeatedly lodge his failure to take any responsibility, contrary to his sworn plea agreement, this may be added to the PSR. It should be noted that the United States agreed to recommend three-points off for

9

acceptance of responsibility, regardless of the fact that it appeared in Court in April 2023 ready to pick a jury. The United States will make this recommendation because it promised it would, but the Defendant should be reminded, as he was at his plea agreement, that this recommendation is not binding on the Court.

      12.    *Paragraph 33*

      The calculation of drug weight is correct. This will be addressed in more detail later in this pleading.

      13.    *Paragraph 49-60*

      Again, the PSR contains the correct allegations in this case. Defendant Bhula takes issue with the section that covers Offense Behavior Not Part of Relevant Conduct. Every PSR has this section, and this Court is bound to consider all information relevant to sentencing. Offense Behavior Not Part of Relevant Conduct should always be considered, and it would be error to ignore it. At an initial sentencing, Congress has provided generally that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." *Concepcion v. United States*, 142 S.Ct. 2389, 2400 (2022) (quoting 18 U.S.C. § 3661); see also *United States v. Frederick*, 897 F.2d 490, 492 (10th Cir. 1990) (under Section 3661, "the continued practice of considering all relevant evidence is presumptively correct");

      Defendant Bhula's denial of these crimes is perfectly acceptable to note in the PSR. He did not plead guilty to these charges. However, these allegations were made with the full support of the United States Attorney's Office, and a grand jury found probable cause for them more than once. It is appropriate that they remain in the PSR, and Mr. Bhula may request that his version be included as well.

The United States has filed pleadings upon pleadings in this matter detailing the proof it has that these crimes occurred. It will not re-hash these arguments here in response to Mr. Bhula objecting to nearly every paragraph of the PSR. Mr. Bhula can't even take responsibility for the facts to which he swore at the plea hearing, of course he disputes the rest of the allegations. Mr. Bhula would have had to go through life with blinders and earplugs to make all of his denials even slightly colorable. The arguments made by Mr. Bhula are on the record, however the factual allegations in the PSR should not be removed and replaced with the history of the Best Choice Inn according to Mr. Bhula.

## II. Defendant's Objections to Base Offense Level

*1.    Defendant's objection to drug quantities and dangerous weapon enhancement*

Defendant Bhula objects to the inclusion of all narcotics seized in this matter as used to calculate his base offense level. This is appropriately included in the calculation as relevant conduct. USSG §1B1.3(a)(1)(B) states:

> In the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, ***whether or not charged as a conspiracy***), all acts and omission of others that were –
> (1)    Within the scope of the jointly undertaken criminal activity,
> (2)    In furtherance of that criminal activity, and
> (3)    Reasonably foreseeable in connection with that criminal activity;
> That occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection of responsibility for that offense.

(emphasis added).

Here, this is jointly undertaken criminal activity. Defendants Bhula, Patel, and Horton all pleaded guilty to maintaining the same drug-involved premises, and Defendant Craft pleaded guilty to Conspiracy to do the same. These admissions all were taken under oath in court, and the Court can consider that as undisputed evidence that the maintenance of the Best Choice Inn as a drug-involved premises was jointly undertaken criminal activity.

The offense level in this case is based on the entirety of the narcotics seized in this case, both on the day of the take-down, and in the controlled purchases leading up to the takedown. It does not take into account evidence of narcotics as can be gleaned from the text messages, or evidence of narcotics the Jane Does admitted to using during the time frame of the indictment period, although if it did, that would also be proper. In a case of jointly undertaken criminal activity, a defendant's relevant conduct includes all reasonably foreseeable acts of others in furtherance of the jointly undertaken criminal activity. *United States v. Topete-Plascencia*, 351 F.3d 454, 459 (10th Cir. 2003). A "District Court may consider the amount of drugs the defendant knew or should have known were involved in the conspiracy in calculating a defendant's relevant conduct." *Id*. Additionally, "the district court may rely on factually supported estimates when the actual drugs underlying the offense are not seized." *Id*, citing *United States v. Ruiz-Castro*, 92 F.3d 1519, 1534 (10th Cir. 1996)(overruled on other grounds).

In this case, the offense level calculation does not include estimates of narcotics in the hotel that were not seized but that are factually supported (additional narcotics observed in Michael Avila's room, daily usage estimates by the Jane Does, evidence in Jane Doe 1 and 2's text messages of specific drug transactions, Jane Doe 3's statement regarding narcotics given to her at the hotel by Greg "Big Man" Weighman as observed by Jonathan Craft, etc.). Therefore, the Court should not be concerned that the amount of narcotics seized, most of which came form one single day at the hotel, is somehow a vast exaggeration of how much drugs was going through this hotel.

Mr. Bhula was running a drug-involved premises. He admits drug use and sales was "rampant." Of course it was foreseeable that this amount of drugs (*at least*) would be seized in this case. Not only did he allow the drug use and sales to continue, but he actively participated on at least one occasion to prevent detection by police. This occurred specifically when he text-

messaged co-defendant Craft on May 5, 2019, directing him to tell everyone he knows not to open doors when the police were there.

Again, the drug premises was not just a house or an apartment, it was an entire motel. No one is accusing Mr. Bhula of laying eyes on every gram of dope that went in and out of the Best Choice Inn. But it is not necessary that the United States prove such specific knowledge. He was on a higher level in the organization anyway. He ran the show so there was no need to get his hands dirty in that way. Defendant Bhula admitted that he knew the residents and employees of the motel (his employees that he hired) were using and selling drugs and that there was "rampant" drug sales and drug use. It was completely foreseeable that Willie Horton would have narcotics on his person and in his vehicle that he parked at the hotel. It was completely foreseeable the Willie Horton and Jonathan Craft would have narcotics and weapons in their rooms.

There was one room on the second floor, on the southeast side, that was strictly for left-behind belongings unsuitable for sale, and miscellaneous damaged hotel furniture. Agents could not even thoroughly search that room because of the risk of being stuck with needles. Apparently, Mr. Bhula, the manager of the hotel at that time, couldn't even be bothered to dispose of those, he just threw them in a pile and closed the door.

The joint criminal activity was running the drug premises. Possession of narcotics by the employees and residents, when Bhula admits he knew employees and residents were using and selling drugs, is foreseeable in this case and is properly deemed relevant conduct.

The same theory goes for the two-point enhancement for a dangerous weapon being possessed. Two points are added when a dangerous weapon is possessed.

> "Dangerous weapon" means (i) an instrument capable of inflicting death or serious bodily injury; or (ii) an object that is not an instrument capable of inflicting death or serious bodily injury but (I) closely resembles such

an instrument; or (II) the defendant used the object in a manner that created the impression that the object was such an instrument (e.g. a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun)

USSG §1B1.1, Application notes 1.(E)

In this case, we have several firearms found in close proximity to narcotics: (1) one .38 special pistol found in a drawer with narcotics Jonathan Craft's room at the Best Choice Inn, (2) three pistols in Willie Horton's room where he kept narcotics, (3) One pistol found in Larry Woolridge's room.

Notwithstanding the firearms found, there were four bb-gun or airsoft pistols/rifle found in the hotel. One airsoft pistol was in A.L.'s room, another was photographed in another room, there were three in and around the office space at the Best Choice Inn. One airsoft pistol was found next to the computer. Testimony at trial from both the housekeepers and co-defendant Willie Horton would be that these three belonged to Kamal Bhula and were kept in the office for deterrence purposes.

Clearly all of these weapons were possessed in furtherance of maintaining the drug premises, or for distributing narcotics. While all defendants have been quick to point out that the airsoft weapons in the office were not real firearms, they resemble as such to someone who doesn't have an opportunity to examine them closely. Under the caselaw, even a hand in a pocket that gives the impression one is holding a gun can be properly deemed using a dangerous weapon. *United States v. Farrow,* 277 F.3d 1260, 1266 (10th Cir. 2002), citing *United States v. Pool,* 973 F.2d 1528, 1531, n. 1 (10th Cir. 1991) (even though defendant carried a toy gun, an object that appeared to be a dangerous weapon should be treated as a dangerous weapon.); accord *United States v. Taylor*, 960 F.2d 115, 116 (9th Cir. 1992) (appearance of a bulge under defendant's shirt that resembled a fun was a dangerous weapon). These weapons appear to be real guns and fit the definition of dangerous weapon.

It was foreseeable to Mr. Bhula that Craft and Horton would be carrying firearms to accompany their drug trafficking. Mr. Bhula himself even possessed airsoft pistols. To argue he couldn't have known that his employees or other parties in the hotel would have firearms when he himself chose to be armed with an airsoft pistol is really stretching the bounds of believability. The purpose of possessing these weapons was, in the least, to protect the drug-premises and the safety of those engaged in maintaining it. Therefore, the two-point enhancement for possession of a dangerous weapon should apply.

   2.   *Defendant's objection to leader/organizer enhancement*

Mr. Bhula objects to the organizer or leader enhancement adding four points under USSG §3B1.1(a). This section states: If a defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels. In making this decision, the court should consider the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. USSG §3B1.1(a) cmt. n. 4. A defendant may be a leader or organizer if he leads or organizes even one other participant. *United States v. Damato*, 672 F.3d 832 (10th Cir. 2012), citing *United States v. Hamilton*, 587 F.3d 1199, 1222 (10th Cir. 2009). The Court's findings on this issue are reviewed under a clearly erroneous standard. *United States v. Litchfield*, 959 F.2d 1514, 1521 (10th Cir. 1992).

It is undisputed that Mr. Bhula was the onsite manager of the Best Choice Inn for over a year. He hired employees, he fired employees, and he trained employees (to include Eddie Hill, Jonathan Craft, and A.L.) to watch for visitors and assess the ten-dollar fee based on length of

visit. Bhula fielded responses from the police, advised not to open doors when the police were there, put up security cameras, negotiated with the city, kept the books (including a separate book for fees), did the payroll, decided who to cut a break on their rent, and literally ran the Best Choice Inn as a drug premises for over a year. He had a contest of which of his employees could collect the most visitor fees and rewarded the winner with extra cash. He assigned shifts to his employees and found subs for them when they could not make it. He could have done away with the visitor fees but he didn't. Next to co-defendant Patel, Bhula benefitted far more financially from this racket than did Craft, Horton, and Hill. He didn't even have to get his hands dirty doing the actual drug sales.

Mr. Bhula argues that he didn't share the profits if this drug activity, but the visitor fees are directly related to the profits, not only with the drug users/sellers, but with the sex workers too. This court should not forget that part of the extortion happening with the sex workers is that they would spend hundreds of dollars a day on narcotics bought at the hotel, which would exacerbate their struggles to pay rent. The drugs and the sex work are connected to this extent. The visitor fees were paid to Bhula, and eventually kicked up the chain to Patel in the form of his lease payment. The visitor fees are not shared between all the defendants because they pay up the chain to Bhula because Bhula is in charge.

The entirety of Mr. Bhula's PSR objections revolve around claims that he didn't know what was happening, he didn't sell any drugs himself, and he didn't have any firearms himself. That is by design.   If there is one lesson in organized criminal activity it is that the bosses do not do the dirty work. The entire point of being a leader and organizer is that it permits someone like Bhula to control what is really important to him – the purse strings – while simultaneously transferring real criminal exposure to subordinates like Horton, Craft, and Hill

Whether it be Al Capone, John Gotti, or Tony Soprano, bosses do not involve

16

themselves in the day-in-day-out dirty business of crime. The people lower on the totem pole do that. Does it exculpate Soprano simply because he engaged in some legitimate activity and assured that there was a degree of separation between himself and the illegitimate side of his business? Certainly not. The same concept applies here. While Bhula might not be Capone, Gotti, or Soprano in terms of the type and volume of crime he committed, he nevertheless structured his criminal activity in similar ways. Should a court take mercy on him because he does some legitimate business? No.

3. *Mitigating role*

Defendant's request for mitigating role falls entirely short. Mr. Bhula has pleaded to maintaining the Best Choice Inn as a drug premises, and that drug use was "rampant." He now, in his request for mitigating role claims he didn't really understand the full breadth of what was happening, he had no decision-making authority and minimal discretion. This is absolutely not true. Mr. Bhula was the boss of this hotel. The text messages bear this out, wherein it is clear that Mr. Bhula ("Rocky") had all the say in who could stay and who could go. There is absolutely no reason to apply a mitigating role.

4. *Upward Departure*

The PSR's evaluation that an upward departure is an option is correct. Under the circumstances, the United States will not be requesting an upward departure for Mr. Bhula because we believe the guideline sentence calculated is appropriate. However, if the guideline sentence is altered due to the granting of objections to the offense level, the United States may file such a motion, depending on the resulting guidelines.

5. *Downward Departure due to Poor Physical Condition*

The United States opposes a downward departure due to the Defendant's physical condition. Typically these are given to allow a person to better manage his physical care outside

the detention facility. In defendant's case, it has not been a secret that the only medical care he can receive is within the jail. Upon information and belief, he is not eligible for free healthcare due to his immigration status. He will be deported to South Africa, the country from which he sought asylum in the first place. A lesser sentence would not allow him to receive treatment at home or in a specialized facility like is contemplated in most of these cases, because he will be in deportation proceedings. Even if he is somehow paroled pending deportation (which is unlikely), he would be without a mechanism for healthcare. Therefore, a downward due to medical reasons doesn't accomplish the goal the departure intends to accomplish.

## **CONCLUSION**

The United States hereby requests that the Court overrule Defendant Bhula's objections for the reasons articulated above. The United States request for sentence will be forthcoming, and will be consistent with its agreement in the plea.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

***Electronically filed 10/20/2023***
LETITIA CARROLL SIMMS
JACK E. BURKHEAD
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274

I HEREBY CERTIFY that on the 20th day
of October 2023, I filed the foregoing
pleading electronically through the
CM/ECF system, which caused counsel
of record for defendant to be served

by electronic means.

***Filed Electronically***
LETITIA CARROLL SIMMS
Assistant U.S. Attorney